SAM HOUSTON, President, etc., Appellant, vs. JAMES F. PERRY, Executor of S. F. Austin, and SAM'L M. WILLIAMS, Appellees — Appeal from Travis County.

A legally authenticated copy of a document of file among the archives of the general land office, and such as the commissioner ought legally to receive and deposit there, is admissible in evidence. [9 Tex. 372; 30 Tex. 109.]

The acts of an officer having competent authority may be presumed to be in conformity with law, and as affording proof of the facts upon which such action was founded; but when done in the exercise of usurped powers, they are not only null, but raise no presumption that such facts existed, as would, had the jurisdiction been vested which justified its exercise.

As a matter of practice, juries should either not state the evidence upon which their conclusions of facts are founded, or, should they do so, the highest evidence establishing the facts, should alone be referred to.

The petition in this case, after setting forth the fact that James F. Perry is the executor of Stephen F. Austin, proceeds to state that the said Stephen F. Austin and Samuel M. Williams, in February, 1831, contracted with the supreme government of Coahuila and Texas, as empresarios, to introduce into Texas and colonize eight hundred families, Mexican and foreign, according to the laws of colonization then existing, within certain limits therein named. That by the terms of said contract, they were allowed six years from the date to complete the same; and that by the contract and the law of the land, they were entitled to receive, as compensation, five leagues and five labors of land for each hundred families, making in all forty leagues and forty labors of land. The petition states that, in pursuance of said contract, they immediately commenced the performance of their obligations, and were proceeding rapidly to consummate the same, when the land offices were closed by the acts of the government of Texas; and that but for these acts they would have completed their contract long since, but that they were prevented by the government from doing so, whereby it became bound to make them titles to said premium lands, or pay them the value thereof, estimated at three hundred and sixty-nine thousand six hundred and eighty dollars.

A trial was had at the fall term, 1846, when a verdict was found for the defendant, and a new trial awarded by the court.

At the fall term, 1847, an amended petition was filed by the appellees, which alleged that, after making the contract as set forth in their original petition, they proceeded, at great expense, to wit, five thousand dollars, to employ surveyors, and have surveyed a considerable portion of the territory specified in said contract, into leagues, quarters of leagues, and labors, suitable for colonization and settlement, preparatory to fulfilling their contract. That they also had a map, or general plan of the same, made out and forwarded to the seat of government of Coahuila and Texas; and that, at their request, on the 30th May, 1835, Robert Peebles was appointed commissioner of said colony, who accepted and qualified on the 23d September, 1835; about which, it is alleged, they expended a large sum, to wit, three thousand dollars. That the said commissioner, in the execution of his duty, issued titles to, and put into possession, one hundred and fifty colonists, when he was stopped, as before alleged, by the acts of the government of Texas; for which they claim damages. At the same term, the cause was taken up, and resulted in a mistrial.

At the spring term, 1848, the cause was continued by consent.

On the 20th October, 1848, another amendment was filed by the appellees, alleging that they had never received any of the premium lands to which they were entitled under their said contract.

In the progress of the suit, various answers and exceptions were put in, the substance of which, however, was embraced in the demurrer and general denial filed at the fall term, 1848. The demurrer assigned as special cause that the contract was contingent and conditional, and that the appellees had not alleged in their petition a performance of the conditions required by the terms of their alleged contract. This demurrer was overruled, and there was a verdict and judgment for the plaintiffs (the appellees in this court), and the defendant appealed.

On the trial, the plaintiffs below offered in evidence a document purporting to be the original contract between the government of Coahuila and Texas and Stephen F. Austin, for himself and as attorney of Samuel M. Williams; also, a document purporting to be a power of attorney from Williams to Austin; also, a document purporting to be a commission from the government of Coahuila and Texas to Robert Peebles, as commissioner of said colony; also, a document purporting to be an abstract of titles issued by said commissioner to settlers in said colony; and, also, two books purporting to contain the original titles issued by said commissioner, which abstract and books are on file in the general land office; to all of which the defendant objected. His objection was overruled, and to which he excepted. In addition to this, the oral testimony of several witnesses was introduced, all going to establish the fact of the introduction and settlement of colonists by Austin and Williams, which was also objected to by the attorney general, but his objection overruled.

BREWSTER for appellant.

GILLESPIE for appellee.

Chief Justice HEMPHILL delivered the opinion of the court, Mr. Justice LIPSCOMB not sitting.

The defendant at the trial excepted generally to all the documents offered as evidence by the plaintiffs, consisting of a translation of the contract between the empresarios and the government of Coahuila and Texas, the original being in the land office; a power of attorney from S. M. Williams, one of the empresarios, to Stephen F. Austin; the other, the commission of the commissioner, R. Peebles; the abstract of titles issued by the commissioner to the colonists, and two books from the general land office, purporting to contain the original titles issued to the colonists in the said colony.

No special objection to these documents, or any of them, is specifically stated; and whether they are all impugned on the same, or on what grounds particularly, we are not informed. Waiving all remark on the imperfection of the bill of excep-

tions, we proceed to state our conclusions on some of the principal points discussed in the able argument of the counsel for the appellant. The circumstances under which this opinion is prepared will not permit an examination of all the questions suggested or investigated in the brief.

I am of the opinion that there was no error in permitting the translation of the contract between the appellees and the state of Coahuila and Texas to be offered in evidence. The translation was legally authenticated, and, by law, is rendered *prima facie* evidence, if the original record would have been evidence. [Laws of 1846, p. 387.]

The original is stated, in the bill of exceptions, to be in the land office; and this is authenticated in the form required by law, for the authorization of papers emanating from the executive department of the state of Coahuila and Texas. [Decree 19, Art. 51, p. 31, Laws C. and T.; Art. 141, Constitution of Coahuila and Texas.] The presumption of law is, that the document in the land office is not a second or third copy of the protocol remaining in the archives of the government of the state of Coahuila and Texas, but is the original copy or testimonio issued to the empresarios at the time of the execution of the contract. Various provisions of law required empresarios, under severe penalties on refusal, to deliver to the commissioner of the general land office all documents in relation to land titles which had been and were considered archives [Laws of 1837, p. 44]; and the contract with the empresarios, being an essential constituent of the archives of a colony, it is but a reasonable inference that this paper was deposited in compliance with the requisitions of law. The commissioner was under no legal obligation to receive any other document in evidence of the contract between the state and the empresarios, than the one forming a portion of the archives of the land titles of the colony, and the translation offered must, *prima facie*, be presumed to be a copy of the document thus legally received. The translation is admissible only on the supposition that the original document could be offered in evidence without proof of its execution. This appears to be conceded; but as

the judgment will be reversed and the cause remanded, the question will be left open for future consideration and decision.

There was no necessity for proof that Austin was duly empowered by Williams to act on his behalf in making this joint contract with the government. The question of his authority was one of the determination of the executive; and having been decided by him, is not open to re-examination. They are treated throughout the instrument containing the terms of the contract, as joint empresarios, and as such they must be regarded.

As the ground of exception to the introduction of the commission is not stated, I shall not undertake to conjecture and examine all the possible objections which might be raised to this document, as an instrument of evidence to establish facts for the purposes of this suit. Why it has remained in the hands of the commissioner to this period is not explained; and no question appears to have been raised as to the necessity of the proof of the signatures of the executive and secretary. I can perceive no advantage in introducing both the abstract of titles as well as the originals themselves, unless for the purpose of comparison, and of showing that there are no others in the book of titles except such as were found there at the formation of the abstract. The object of their introduction was to prove the number of titles that had issued, and of this fact the originals furnished the highest evidence, and which must be conclusive, unless upon proof of their forgery, or that they were issued fraudulently, or to fictitious persons. No suspicion has been thrown upon any of the titles produced as evidence, and which were issued before the closing of the land offices. For these, according to the decisions at the last term, the empresarios would, certainly, be entitled to the premium corresponding with the number of titles issued. But for those issuing after the close of the land offices, the empresarios are not entitled to recover any premium. The former furnish presumptive evidence that the grantees are colonists settled within the limits of the contract; the latter being illegal and contrary to law, are not evidence of any such facts as would authorize a

recovery in this action. The acts of an officer having competent authority may be presumed to be in conformity with law, and as affording proof of the facts upon which such action was founded; but when done in the exercise of usurped powers, they are not only null, but raise no presumption that such facts existed as would, had the jurisdiction been vested which justified its exercise.

The empresarios are entitled to their premium for all settlers introduced into the colony or country before the declaration of independence, through the agency, or at the expense, of the former. And where no titles have been issued, or they are contrary to law, the fact of the introduction of colonists, and that they should be regarded as settlers of the colony, must be proved by appropriate evidence. The jury, in their verdict, state that titles were issued to one hundred and fifty settlers, as appears from the abstract of titles in the land office, and the original titles on file therein, and the testimony of Horace Chrisman. Had all of these titles been issued by a legitimate commissioner, the finding, upon their evidence, would not have been vitiated by the additional statement that the verdict was based also upon the testimony of a witness to the same facts. As a matter of practice, juries should either not state the evidence upon which their conclusions or facts are founded, or, should they do so, and the facts have been established upon the highest evidence, this should alone be referred to, and not to such secondary evidence as may have been admitted during the progress of the trial.

The depositions of the witness might have been received had the titles been inaccessible. The observations are applicable to such titles only as emanated before the business in the land office was suspended. The titles issued after that period, and the testimony of the witness that there were such titles prove no facts conducing to support the claims of the petitioners. Had the witness stated that these illegal titles had issued to actual settlers in the colony, this would have been competent evidence to establish the fact of the actual existence of the guarantees, and that they have been received as colonists

under the empresario contract. But there is no legal evidence in the record to prove the number of settlers who, in consequence of the closing of the land offices, had not received their titles. The jury, in a subsequent portion of the verdict, described the one hundred and fifty grantees as families, and award a corresponding premium to the petitioners. The slightest examination of the titles shows that many of them were issued to single men; and the verdict can only be accounted for on the supposition that the titles were either not inspected, or the jury were not aware that the amount of their award should be affected by any considerations in relation to the capacities of the grantees as single men, or as heads of families. Their attention does not appear, in any shape, to have been directed to the law which should have regulated their action in this particular.

Their verdict is so palpably against the evidence (had it been all legally admissible) that, on that ground, a motion should have been made for a new trial. And had there been no other objection to the judgment, it would have been found, perhaps, impossible, under the rules of practice, for the want of that motion, to have revised the decision of the lower court, although the verdict is contrary to the evidence.

The important points raised in this cause have been glanced at very cursorily; and it is to be regretted that, under the circumstances, they could not have received a more thorough examination. The judgment of the court below is reversed, and the cause remanded for a new trial.