## R. L. SMITHERS v. W. J. LOWRANCE.

### No. 1570.  Decided June 6, 1906.

**1.—School Land—Classification—Presumption from Official Acts.**

The action of the Land Commissioner in awarding school land to one apply-ing to purchase it, as dry grazing land, raised a presumption that it was so classified at the time of the application; and this was not overthrown by the subsequent act of the Commissioner in cancelling this sale and selling to an-other on the ground that it was classified and appraised as dry agricultural land. (Pp. 80, 81.)

**2.—Same.**

The statutes confer no express authority on the Land Commissioner to can-cel a sale of public land on the ground that it was illegally granted; if illegal the sale presented no obstacle to its resale to another purchaser; but this, being a proceeding to which the first purchaser was not a party, did not affect his rights nor shift the burden of proof as to the validity of the first sale in a con-troversy between him and the second purchaser; the latter must still prove that the first purchase was not in accordance with the classification and appraise-ment then made in order to defeat it. (Pp. 81, 82.)

**3.—Land Office—Record—Identification—Evidence.**

It being the duty of the Land Commissioner to keep his records open for the inspection of the public, it will be presumed that a record pointed out by him, to one making a copy thereof, as the classification of lands in a certain county, was what he declared it to be. (P. 82.)

**4.—Same—Examined Copy.**

The records of the Land Office may be proven by an examined copy made and testified to by any competent witness. (P. 82.)

**5.—School Land—Classification—Land Office Certificate.**

On the issue as to the classification of a section of school land in G. County, awarded to a purchaser in 1900, a certified copy of the list of sold and unsold school lands in that county, with their classification and appraisement, made and transmitted by the Land Commissioner to the county clerk in May, 1901,

in obedience to the requirements of the Act of April 18 of that year (Laws 1901, p. 292), was admissible in evidence. (Pp. 82, 83.)

**6.—Same—Statute—Executive Construction.**

The Act of April 18, 1901 (Laws 1901, p. 292), is susceptible of the construction that the Land Commissioner should properly include in the list of school lands, with their appraisement and classification, to be certified by him to the county clerk under that Act, land sold, as well as those unsold; and if the construction be in doubt, that given to the Act by the Land Commissioner, in including in his list lands previously sold, should be followed. (P. 83.)

**7.—Evidence—School Land—Classification and Appraisement.**

On the issue whether school land, purchased by plaintiff as "dry grazing," was so classified and appraised when awarded to him, a certified list of the school lands in that county, showing it to be so classified and appraised, sent to the county clerk by the Land Commissioner after plaintiff's purchase, in compliance with a statute, was admissible as a circumstance to support plaintiff's claim. (Pp. 83, 84.)

**8.—Evidence—School Land—Cancellation of Sale.**

The act of the Land Commissioner in cancelling a sale of school land on the ground that it was illegally made could not affect the rights of the purchaser, and was not admissible in evidence against him. (P. 84.)

**9.—Evidence—School Land—Classification—Certificate.**

A certificate of the Land Commissioner as to the classification of certain school land as being the record in use in his office "from about 1897 to about 1902" was admissible in evidence; the power conferred on him to give certificate as to the contents of the record includes the power to point out by description the record from which the copy was taken. (Pp. 84, 85.)

**10.—Same—Knowledge or Conclusion of Commissioner.**

While the Land Commissioner's certificate as to his conclusion from the records or matters within his personal knowledge is not evidence, his certificate that the records show certain facts will be presumed to be from the records themselves, and not to embody conclusions or matters known from other sources. (P: 85.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Mitchell County.

Smithers sued Lowrance and defendant had judgment. Plaintiff appealed and on affirmance obtained writ of error.

*Ed J. Hammer,* for plaintiff in error.—The issue being the classification of lands on September 18, 1899, and the records of the General Land Office showing a change made in the classification and showing that one classification had been crossed out and another written above it, and there being nothing on the record to show when such change was made, examined copies of the classification and appraisement record in the General Land Office showing the condition of such record just prior to September 18, 1899, and shortly after said date, is admissible. The contents of entries in any public book or register may be proved by an examined copy. Smithers v. Lowrance, 79 S. W. Rep., 1088; Mutual. Life Ins. Co. v. Baker, 31 S. W. Rep., 1076; 1 Greenleaf on Evidence, secs. 91, 142, 508; Harvey v. Cummings, 68 Texas, 603; 24 Am. and Eng. Enc. of Law (2d ed.), p. 198, note 2; 24 Am. and Eng. Enc. of Law (2d ed.), p. 196; Freeman v. Aninich, 87 Texas, 135; Reast v. Donald, 84 Texas, 649; 17 Cyc., p. 317, note 43; 17 Cyc., p. 323, note

82; Hathaway v. Addison, 48 Me., 440; Gurney v. Howe, 69 Am. Dec., 299.

The law nowhere authorizing the Commissioner of the General Land Office to indorse a cancellation of a sale of school land upon the face of the obligation of the purchaser, except for nonpayment of interest, nor upon the file wrapper, such indorsements, if made by him, do not become a part of the record, and hence can not be certified to by him as facts contained therein. Batts' Civil Statutes, art. 2308 (2253); Boaz v. Powell, 96 Texas, 3; Fisher v. Ullman, 22 S. W. Rep., 523; Buford v. Bostick, 58 Texas, 63; 24 Enc. of Law, p. 192; 24 Enc. of Law, p. 142, note 3; Stiles v. Japhet, 84 Texas, 91; Shifflet v. Morelle, 68 Texas, 388; Wetmore v. U. S., 10 Peters (U. S.), 647; Batts' Civil Statutes, art. 62 (57) and 70 (65); Texas Mex. R. R. v. Jarvis, 69 Texas, 527; Carrington v. Potter, 37 Fed. Rep., 767; Heintz v. Thayer, 92 Texas, 658.

*Smith & Smith, C. H. Earnest* and *Beall & Beall,* for defendant in error.—An examined copy of a public record is not admissible to show the contents thereof unless the authenticity of the original from which the copy is made is shown by the testimony of its custodian, or some one having actual knowledge thereof. Smithers v. Lowrance, 79 S. W. Rep., 1088; York v. Gregg, 9 Texas, 92; Goble v. State, 60 S. W. Rep., 968; Coons v. Renick, 11 Texas, 134; Gersteman v. State, 33 S. W. Rep., 357; Edwards v. Barwise, 6 S. W. Rep., 677; Dunn v. Choate, 4 Texas, 18; Land Mtg. Bank of Texas v. Quanah Hotel Co., 32 S. W. Rep., 567.

Where an examined copy is offered for the purpose of showing an alteration in a record, the existence of such alteration should first be shown by the custodian of the record. Edwards v. Barwise, 6 S. W. Rep., 677; Dunn v. Choate, 4 Texas, 18; Land Mtg. Bank of Texas v. Quanah Hotel Co., 32 S. W. Rep., 576.

The law requiring the Commissioner to keep files and file wrappers, an endorsement thereon of some action taken by him with reference to the papers thereof is a record of his office of which he may give a certified copy or from which he may give a certificate of facts. Brightman v. Comanche Co., 63 S. W. Rep., 859-60; Sayles' Civil Stats., arts. 4046, 4047, 4048.

The Land Commissioner has the authority to cancel a void sale. Burnam v. Terrell, 78 S. W. Rep., 502; Moore v. Rogan, 73 S. W. Rep., 2; Hazelwood v. Rogan, 67 S. W. Rep., 80 et seq; Thompson v. Autry, 52 S. W. Rep., 581; Nard v. Baker, 66 S. W. Rep., 307; Spence v. Dawson, 67 S. W. Rep., 180; Anderson v. Terrell, 76 S. W. Rep., 432.

Official acts being presumed regular, it is not necessary as a predicate for showing such action to prove the existence of the facts authorizing such action on the part of the official. Corrigan v. Fitzsimmons, 10 Texas Ct. Rep., 247; Landers v. Bolivar, 73 S. W. Rep., 1075; Binion v. Harris, 74 S. W. Rep., 5880; McBane v. Angle, 69 S. W. Rep., 433; Burnam v. Terrell, 78 S. W. Rep., 502.

A recital in a certificate of authenticity appended to a certified copy, of a conclusion of the officer is inadmissible. Sayles' Civil Stats., art.

2308; Fisher v. Ullman, 22 S. W. Rep., 523; Buford v. Bostick, 58 Texas, 63.

Plaintiff having the burden of proving that his home tract was on September 18, 1899, classed as grazing, appraised at $1 per acre, and so listed with the county clerk, and having failed to show such listing, was not harmed by the exclusion of evidence that neither showed nor tended to show such facts. Smith v. Hughes, 12 Texas Ct. Rep., 859; Binion v. Harris, 74 S. W. Rep., 580; McBane v. Angle, 69 S. W. Rep., 433; Davis v. McCauley, 66 S. W. Rep., 1124; Bell v. Williams, 66 S. W. Rep., 1109; Jones v. Wright, 12 Texas Ct. Rep., 110.

GAINES, CHIEF JUSTICE.—This action was brought by the plaintiff in error against the defendant in error to establish title to and to recover two sections of school land, which for the purposes of this opinion are sufficiently designated as section 8 and section 12. The judgment was in favor of the defendant both in the trial court and in the Court of Civil Appeals.

September 18, 1899, the plaintiff in error made separate applications to purchase the two sections, section 8 as his home section and section 12 as additional lands. He was an actual settler upon section 8 and was a qualified purchaser. The applications were in compliance with the law in all respects, and on the 16th day of February, 1900, the lands were awarded to him. On August 20, 1901, the Commissioner of the General Land Office cancelled or attempted to cancel the sale to Smithers of both sections; section 8 on the ground that it was sold as "dry grazing" land, when it was classified as "dry agricultural land," and section 12 for the reason, that since, as he held that the purchase of the home section was invalid, the purchase of the additional lands necessarily fell with it. On December 8, 1900, the defendant in error filed applications to purchase the two sections as dry agricultural lands and in all respects complied with the requirements of that statute in that regard. Both were awarded to him September 3, 1901.

The right of the plaintiff to recover (and he must recover if at all upon the strength of his own title) depends upon the question whether at the time of his application section 8, his home section, had been classified as dry grazing land.

We shall not attempt to follow the specifications of error as they are presented to this court.

When plaintiff in error's application for section 8 was accepted by the Commissioner and the land awarded to him, the presumption was that it had been classified as applied for and that it had been appraised at the price offered. It is elementary law that where an officer has acted within the scope of his powers, in the absence of proof to the contrary, the existence of the facts necessary to authorize his action will be presumed. This principle has been recognized and announced in numerous decisions of this court beginning with the case of Houston v. Perry (3 Texas, 390). The principle is recognized by counsel for defendant in error in this case, but it is insisted that it applies to the action of the Commissioner of the General Land Office in cancelling the award to the plaintiff in error and in awarding the land to the defend-

ant in error upon his application. In other words, it is urgently main-
tained on behalf of the defendant in error, in effect, that the action
of the Commissioner in awarding the land to him, shifts the burden of
proof upon the plaintiff in error, and makes it necessary for him to
show by evidence that the Commissioner acted illegally in cancelling
the previous award. We here remark that we find no express authority
for the Commissioner to cancel an award upon the ground solely that
it was illegally granted. In other words, it is not a course of proced-
ure expressly authorized by the statute. But if an award be made
not authorized to be made, it is simply void and presents no obstacle
to a purchase by another applicant. But the question is here whether
it appears that the land was illegally awarded in the first instance to
plaintiff in error—the presumption being in the first place that it was
not. It was the right of the defendant in error to rebut that presump-
tion. But the question is, has he done so? We think it can not reason-
ably be claimed that he has proved the illegality of the first award by
any direct evidence. Does the fact that the Commissioner saw fit to
disregard the first award and to award the land to another applicant
raise the presumption that the first award was illegal and thereby
shift the burden of proof upon the plaintiff in error to show that it was
valid? In Houston v. Perry, supra, it is said: "The acts of an officer
having competent authority may be presumed to be in conformity
with law, and as affording proof of the facts upon which such action
was founded; but when done in the exercise of usurped powers they are
not only null, but raise no presumption that such facts existed as would,
had the jurisdiction been vested which justified its exercise." (3 Texas,
395.) Now the Commissioner of the General Land Office is without
authority to sell school land which has been legally sold, where the
purchase is kept in good standing and it is a usurpation of power for
him to attempt to do so. We think therefore that before any presump-
tion as to the validity of the second sale can be indulged, the burden
is upon the purchaser at the second sale to show the invalidity of the
first. In the American and English Encyclopaedia of Law it is said:
"The general presumptions that all public officers have done their duty
and that their acts are regular are limited by the rule that in all sum-
mary and ex parte proceedings the party claiming under them through
acts which divest the rights of third persons must make strict proof
of the performance of every prerequisite of the law." (22 Am. & Eng.
Ency Law, 1275.) The proposition is taken from the opinion of the
court in the case of Morton v. Reeds (6 Mo., 64), which involved the
question of the validity of a tax sale, and in which was applied the very
general rule, that as to the prerequisites of such sales no presumption
will be indulged. In this case the plaintiff in error had an apparent legal
right to the land he had purchased, and we do not think that the action
of the Commissioner could even so far affect his right as to destroy
the presumptions in favor of the validity of his award, and thereby
shift the burden so as to place upon him the duty of showing that the
land had been duly classified and appraised at the time he made his
applications. The effect of such action would be to impair the title

of the plaintiff in error by a proceeding to which he was in no sense a party. The decision in Howard v. McKenzie (54 Texas, 171) is authority for the proposition that the cancellation of a patent not shown to be authorized is without effect.

. During the progress of the trial the plaintiff in error offered in evidence what were claimed to be the records of the appraisement of the school lands of Kent and Garza Counties, all of which were excluded. In connection with the offer the plaintiff in error introduced the testimony of a witness, who testified that some time in July or August, 1899, he examined the records kept in the Land Office of the classification of the school lands in the counties named; that they were pointed out to him by the Commissioner then in office as such records, and that section 8 appeared upon the records both of Kent and Garza Counties as classified as "dry grazing" lands; that on February, 1896, he again examined the same records and made an examined copy of such records as to each of the counties. The copies so testified to were offered in evidence, but were excluded by the court. There were numerous objections to the copies—the main objection being that the witness did not know they were the records and the fact that they were pointed out by the Commissioner was mere hearsay evidence; and that in order for an examined copy to be admissible as evidence it must be made and testified to by the custodian thereof.

Since it is the duty of the Commissioner of the General Land Office to keep his records open for the inspection of the public, we think it is to be presumed that a record pointed out by him as the record of the classification of lands in certain counties is the record he declares it to be. That the examined copy may be made and may be proved by any person competent as a witness in the case, we think there can be no question. In Harvey v. Cummings (68 Texas, 599) it was held that an examined copy of a decree of divorce was legally proved by a witness who was not the custodian of the record; but from the report of the case this particular objection does not appear to have been interposed. "It is a common law rule that proof of public records or documents may be made by examined copies sworn to by the custodian of the record or any competent witness." (17 Cyc., 323.) The rule thus stated is supported by several citations in the note to the text. In the case of the State v. Lynde (77 Me., 561), the court says: "Examined copies are, in England, resorted to as the most usual mode of proving records. Mr. Greenleaf says (1 Ev., sec. 485): "Where the proof is by copy, an examined copy, duly made and sworn to by any competent witness, is always admissible." Why not admissible? The evidence is as satisfactory certainly as a certified copy. In the latter case we depend upon the honor and integrity of an official, and in the former upon the oath of a competent witness. In either case, an error or a fraud is easily detectable. Probably, the reason why such a mode of proof has not been much known, if known at all, in our practice, is that it is cheaper and handier to produce copies, and if a witness comes instead, it is more satisfactory to have the officer who controls the records bring them into court?"

Therefore we conclude that it was error to reject the examined copy

made by the witness Hamner on the — day of February, 1900. For the same reason, we think it was error to exclude the copies of the certified copy of the list of sold and unsold school lands in Kent and Garza Counties, which were made by Hamner after the records were altered. In explanation we note just here that the dividing line between Kent and Garza Counties intersects the two sections of land in controversy and that therefore the classification and appraisement were properly made for each of the counties.

We are also of opinion, that the court erred in excluding as evidence the certified copy of the list of sold and unsold school lands of Garza County made May 1, 1901, under the Act of April 18, of that year. The Act referred to reads in part as follows: "That it shall be the duty of the Commissioner of the General Land Office to notify in writing the county clerk of each county the classification and valuation fixed upon each section of land in his county, and in each county attached to it for judicial purposes, and said Commissioner of the General Land Office shall make forthwith a correct and revised list for each county of all unsold lands therein." (Laws 1901, p. 292). Whether the Act makes it the duty of the Commissioner to notify the county clerk of the classification and appraisement of the school lands already sold is a question not free from difficulty. But the first clause of the sentence is broad enough to embrace both. The Act as shown by its title relates to "the sale and lease of public free school and asylum lands." All such lands although in a sense sold are school and asylum lands until the purchaser has lawfully received a patent, or at least until the purchaser has so far complied with all the requirements of the law so as to entitle him to a patent. Until this is accomplished the State has the legal title in trust for the fund to which the land belongs and the land may go back upon the market for sale by it for failure to comply with some unperformed condition of the statutory contract. So that it is not inapt to speak of lands which have been sold, but which are neither patented nor entitled to be patented as "public free school and asylum lands," from which it seems to follow, that it was the intention to make it the duty of the Commissioner to give notice to the county clerks of the respective counties of the classification and valuation of all lands to which the title in a purchaser had not been perfected, as well as of those of which no statutory purchase had been made. This construction is borne out by that clause of the section quoted which requires the Commissioner to revise the list of the "unsold lands." As intimated in Knapp v. Patterson (14 Texas Ct. Rep., 321), it may subserve a useful purpose to show upon the list the classification and valuation both of the lands which remain unsold, and of those which have been sold in which the title remains inchoate. At all events, such was the course pursued in the case just cited; and it was the course pursued in the present case apparently in obedience to a law which had but a few days before come into effect. We think therefore that if there be any doubt as to the construction of the provision we have quoted, it is a case in which the construction of the Commissioner of the General Land Office as shown by his action should control.

But it is urged that because the notice was sent out after the plain-

tiff applied to purchase the land the evidence was immaterial, therefore, it is not error to reject it. This notice was sent out more than a year after the plaintiff applied to purchase. It was also after the defendant applied for the land but before the land was awarded to him. It was also before the Commissioner undertook to cancel the plaintiff's award. We think therefore it was a circumstance tending strongly to show that at the time the plaintiff applied to purchase, the land was classified as dry grazing land.

We are further of opinion, that the court erred in admitting over the objection of the plaintiff evidence that on the 20th day of August, 1901, the Commissioner cancelled plaintiff's awards and also the endorsements on the file wrappers of plaintiff's applications, showing that they had been marked cancelled. As we have already said, no statute expressly authorized that officer to cancel an award because it was illegally made; and therefore his act in that regard was an unofficial act and could not prejudice the claimant under the sale attempted to be cancelled.

The plaintiff also offered in evidence a copy of the classification and appraisement of the school lands of Kent County, which showed that at one time section 8 had been marked upon the list as "D." "G.," meaning evidently dry grazing land and that these letters had been scratched across in red ink and above them had been written in the same ink "Dry" "agr'l." To the list was appended a certificate under the hand and seal of the Commissioner of the Land Office the body of which is as follows: "I, John J. Terrell, Commissioner of the General Land Office of the State of Texas, do hereby certify that the above and foregoing is a true and correct copy of that part herein shown, of the classification and appraisement record of Garza County, Texas, made under Act of 1895, and in use from about 1897 to about 1902, inclusive, which said record is kept as an archive of this office." Upon objection by the defendant the evidence was excluded. The question so presented has given us much trouble in its determination; but we have all reached the conclusion that the court erred in excluding the evidence. The main objection urged against the introduction of the copy as evidence was to that part of the certificate which reads, "made under the Act of 1895, and in use from about 1897 to about 1902, inclusive." The majority of the court are of opinion, that since the statutes authorize the Commissioner of the General Land Office to certify to the copies of the records in his office, and make such copies evidence, he must from the necessity of the case have authority as a part of his certificate to point out by name or by description if necessary, the record from which the copy was taken. One member of the court is of opinion, that since under article 2308 of the Revised Statutes a certificate of "facts contained in the papers, documents or records" of his office made by the Commissioner of the General Land Office, may be used as evidence, the facts stated in the certificate and which were objected to on behalf of the defendant were admissible under that statute. It is thought that the presumption should be, that he followed the law, and stated only such facts as directly appeared from the records and papers of his office, although his certificate does not expressly say so.

What we have said applies also to the like certified copy of the classification of the lands in Garza County.

We also think that the certificate which was excluded as shown by the plaintiff's bill of exceptions No. 10, should have been admitted. It appears from the explanation of the trial judge appended to the bill of exceptions that the evidence was excluded, for the reason that the statement contained in the certificate—"which said record was in use prior to the above mentioned record of the Act of 1897"—was not a fact capable of being legally certified. That part of the certificate containing these words is as follows: "I do further certify that the records of this office show that said section was classified as dry grazing land upon the classification and appraisement record kept as an archive of this office made under the Act of 1897, on page 3, of volume 6, which said record was in use in this office from 1897 to 1902. And said classification and appraisement record shows that the words "Dry Graz." are stamped in the classification column opposite said section 8 in the usual manner as is done with several other sections on same page in name of same grantee; that the classification and appraisement records of this office in use prior to the above mentioned record of the Act of 1897, show said section was classified as dry agricultural land in Kent County. Texas."

That the Commissioner's certificate of his conclusions from his records is not evidence has been ruled by this court; and it is clear that the statute does not authorize him to certify to facts of his own knowledge. His certificate which is made evidence must be of facts "contained in the papers, documents or records" of his office; that is to say, to such fact or facts as directly and not circumstantially appear from such papers, documents or records. The objection seems to have been to the statement, that the records upon which the classification appears, were those in his office during certain years. Since the Commissioner certifies that his records show the facts which he states, we think it is not to be assumed, that in mentioning the years in which the record was in use, he spoke from his own knowledge or from knowledge derived from any other source except the records themselves. It seems to us that the entries upon the records not only might show, but would probably show, during what periods they were in use, or that they might identify themselves by appropriate words and figures written thereon. Certainly in such a case we should not assume that the Commissioner is stating facts of his own knowledge and not facts contained in the records of his office. We conclude that it was error to exclude the evidence.

While it may be that when the plaintiff showed that the land had been awarded to him as a purchaser, the presumption would be that he continued to pay his interest and to reside upon it as required by law; still we think that he should have been permitted to show these facts directly; and that it was error to exclude the testimony proffered for that purpose.

For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*