### HENRY WILKINS v. J. A. CLAWSON ET AL.

#### Decided April 3, 1908.

**1.—Evidence—Certificate of Commissioner of Land Office.**

    The certificate of the Commissioner of the Land Office is admissible as evidence only of facts contained in papers, documents or records of his office, and cannot be used as evidence of any fact otherwise known to the officer but which does not directly appear from the records of the office.

**2.—Same.**

    The following certificate of the Commissioner of the General Land Office, viz.: "I . . . do hereby certify that the above sketch of a portion of Harris

County is a true and correct copy of the map of Harris County, drawn by Geo. H. Bringhurst from actual surveys in the year 1840, and now an archive of this office," held not admissible as evidence of an actual survey of the land represented on the map.

### 3.—Improper Evidence—Withdrawal from Jury.

The admission of improper evidence to the jury becomes harmless when the court instructs them not to consider the same for any purpose, and this without regard to the length of time which may elapse between the admission of the evidence and the instruction of the court.

### 4.—Evidence—Allegations in Pleading.

Statements in pleadings are admissible in evidence against the party filing the same, whether such pleadings are sworn to or not. But it is always competent for the party against whom the pleadings are offered to show that the statements were inadvertently made, or were not authorized by him, or were made under a mistake of fact.

### 5.—Boundary—Charge Sustained.

In trespass to try title the plaintiff has the burden of proving, by a preponderance of the evidence, his title to the land in controversy. Charge in such suit, upon an issue of boundary, considered, and held not subject to the objection that it conveyed to the minds of the jury a subtile distrust of plaintiff's contention, as compared to that of defendants, and obscured the rights and magnified the burdens of the plaintiff.

### 6.—Same.

In an action against a number of defendants to establish a boundary, and in which the defendants claimed their respective tracts in severalty, charge considered, and held not susceptible of the construction that it required the jury to state, in their verdict, the names of the defendants against whom they found, if any; nor that it required the jury to fix the boundaries of each of the several portions of the land claimed by the defendants which the jury might find the plaintiff entitled to recover; but only that the jury should fix the location of the line in controversy, and this was proper.

### 7.—Brief—Grouping Assignments.

When assignments of error which are not germane are grouped and presented together in appellant's brief, they are not entitled to consideration.

Error from the 55th Judicial District, Harris County. Tried below before Hon. W. P. Hamblen.

*J. W. Campbell,* for plaintiff in error.—Fact as to actual surveys could not lawfully be proven by the certificate. Smithwick v. Andrews, 24 Texas, 494; Allbright v. Governor, 25 Texas, 694; Tinsley v. Rusk Co., 42 Texas, 46; Leon Co. v. Houston, 46 Texas, 576.

Unlawful evidence cause for reversal. Tucker v. Hamlin, 60 Texas, 175.

The main controversy being the true location of southwest corner of the Morgan league, what a deceased surveyor, who had not located the league, nor been shown the lines or corners of same by any one who had seen the league run out or lines or corners marked, said that some one else said (such some one else not shown to have accurate knowledge of the lines or corners of the land), is the most objectionable form of hearsay evidence, and does not come within any exceptions permitted in questions of boundary, but was, and is, unlawful evidence, on the important controverted issue in the case, which the law deems prejudicial and reversible error, in no way healed or

cured by the attempted withdrawal from the jury two days later, at the suggestion of defendants' counsel. Russell v. Hunnicutt, 70 Texas, 659; Titterington v. Trees, 78 Texas, 570; Welder v. Carroll, 29 Texas, 335; Stroud v. Springfield, 28 Texas, 649.

Not cured by subsequent withdrawal: McCauley v. Long, 61 Texas, 80.

The pleadings offered in evidence were not sworn to by Henry Wilkins, not shown to have been known to him; the allegations as to location of Hugh Morgan league were not necessary or material in sustaining the suit, and were improvidently made by his counsel, and should not have been admitted for any purpose. Buzard v. McAnulty, 77 Texas, 445; Overand v. Menczer, 83 Texas, 127.

The court erred and prejudiced plaintiff's rights by the wording and framing of the third, fourth and fifth paragraphs of the charge given the jury (which following after the suspicion cast on plaintiff by first and second paragraphs of the charge), by the use of the words, "burden of proof" and "by a preponderance of the evidence," appearing four times in third paragraph, once in fourth, and once in fifth paragraph, in an entire charge of seven short paragraphs, so emphasized and magnified the burden resting on plaintiff as probably caused the jury to believe that, under the law, they must require of plaintiff unusually full and satisfactory proof of the location of the land as claimed by him. Powell v. Messer, 18 Texas, 406; Fore v. Hitson, 70 Texas, 521; Galveston, H. & S. A. Ry. Co. v. Kutac, 76 Texas, 478; Hays v. Hays, 66 Texas, 609.

All corners of equal dignity, etc: Phillips v. Ayers, 45 Texas, 607.

Call for prairie line of adjoining survey, with slight circumstances indicating mistake, the call does not control course and distance: Gerald v. Freeman, 68 Texas, 203; Booth v. Strippleman, 26 Texas, 436.

Under facts of this case for the charge to refer to the line of adjoining survey is to say Hannah Nash league line, and upon the weight of evidence. See former appeal, Clawson v. Wilkins, 15 Texas Ct. Rep., 664.

*Ewing & Ring* and *L. B. Moody,* for defendants in error.

PLEASANTS, CHIEF JUSTICE.—This is an action of trespass to try title brought by plaintiff in error against the defendants in error and others to recover title and possession of all the Hugh Morgan league of land except a strip 1374 varas in width on the southern side of the league and extending the entire length of the league from east to west. The defendants in error disclaimed title to that portion of the land sued for lying east of a line beginning on the south line of the league on the west bank of Cedar Bayou and running north on a course parallel with the east line of the survey to the north line of said league. As to those portions of the remainder of the land in controversy claimed by the defendants in error each of said defendants answered by pleas of not guilty as to specific tracts claimed by them respectively, and several of said defendants also answered by pleas of limitation. The trial in

the court below by a jury resulted in a verdict and judgment in favor of defendants.

The only issue raised by the evidence is the location of the west boundary line of the Hugh Morgan league. This league was located in 1835. The original English field notes which accompanied the grant and which the law required to be translated into Spanish and embraced in the grant, describes the land as follows:

"Beginning on the west side of Cedar Bayou and on the north boundary line of a league surveyed for Mrs. Nash, mound and stake. Thence with said line N. 60 E.,

| | | |
|---|---|---|
| 500 | v | timber |
| 3008 | ″ | across Cedar Bayou the prairie at the edge of the bayou is 11 vs wide bears S 9 E, |
| 5000 | ″ | mound in the prairie, Thence N 10 W, |
| 5000 | ″ | mound in the prairie, Thence S 80 W, |
| 980 | ″ | to the timber, |
| 1880 | ″ | Cedar Bayou (interlined—"8 vs wide bears S 20 W"), |
| 3400 | ″ | prairie, |
| 5000 | ″ | mound in the prairie, 4th corner. Oak, cedar, ash and pine timber. Undergrowth Spanish mulberry & palmetto. Land sterile. Thence on Randon line S 10 E, |
| 4989.5 | ″ | To the place of beginning. .Containing one league of about six labors of farming and the balance pasture land. Aug. 1st., 1835." S. C. Hiroms. |

The interlineations and erasures above shown appear in the original copy of the field notes on file in the General Land Office.

The original plat, which was returned with the field notes, shows that a stream runs across the survey from north to south near the center of the survey. The name of the stream is not shown on this map; but its location in the survey much more nearly fits the calls for Cedar Bayou under the construction of the field notes contended for by plaintiff than under that claimed by defendants. The field notes in the grant describe the land as follows:

"The tract surveyed to the colonist Hugh Morgan begins in the north line of the survey of Mrs. Nashes, west of Cedar Bayou, the first corner of this survey was formed in the above mentioned line raising a mound of earth around a stake, from which to the north 80 degrees east there were measured 5000 varas, and the second corner was formed in a prairie, a mound of earth around a stake, from which on the course to the north 10 degrees west there were measured 5000 varas, and the third corner was formed in a prairie, a mound of earth around a stake, from which on the course to the south 80 degrees west there was measured 5000 varas, and the fourth and last corner was formed in a prairie, raising a mound of earth around a stake. From there to the south there was measured 4989.5 varas until closing on he beginning corner of this survey. Of the aforesaid tracks 6 labors belong to the class of arable land and the remaining 18 to that of pasture. Its configuration being that which in duplicate I enclose to you. Nacogdoches, August 30,

1835. (Signed) Authur Henri, Surveyor, Joseph Carriere, Translator." The title was formally extended on August 30, 1835, as follows: "In the name of the State, I concede to, confer upon and put aforesaid Hugh Morgan in real and personal possession of one league of land, situated on the north line of the Lady Sarah Nashes, west of Cedar Bayou, whose boundaries are defined in the map and notes of survey returned by the surveyor, Citizen Arthur Henri, as is seen in this title."

The location of the Hannah Nash survey is definitely established. The northwest corner of that survey is in the prairie and unmarked, but it is fixed by calls for course and distance from Cedar Bayou at a point 1169 varas S. 80 W. of the west bank of said bayou.

The plaintiff contends that the southwest corner of the Morgan as shown by the above field notes is at a point 3008 varas S. 80 W. from the intersection of the north line of the Hannah Nash survey with the west bank of Cedar Bayou and the west line of the Morgan runs from said corner N. 10 W. 5036 varas. If the Morgan is located as contended by plaintiff it includes all of the land in controversy.

The land claimed by the defendants is a part of the Gregory surveys which were located in 1839 along the west line of the Morgan and calls for said line. The field notes of the Gregory surveys and copies of several old maps of Harris County introduced in evidence by the defendants, locate the west line of the Morgan as beginning on the west bank of Cedar Bayou in the north line of the Nash survey and running thence N. 10 deg. W. the distance called for in the grant. The defendants contend that this is the true location of said line.

If either the line claimed by the plaintiff or that claimed by the defendants be adopted the original field notes of the Morgan contain many discrepancies in calls for distances to timber and prairie and to Cedar Bayou.

This is the third appeal of this case. The opinions on the former appeals are reported in 11 Texas Ct. Rep., 306, and 15 Texas Ct. Rep., 662.

The first assignment of error is as follows: "The court erred and prejudiced the rights of plaintiff by admitting in evidence over the objections of plaintiff, a sketch from the General Land Office, of a part of a map of Harris County, which showed the Hugh Morgan league located with its southwest corner on the west bank of Cedar Bayou, and the Gregory surveys located with their east line a common line with the west line of the Hugh Morgan survey as thus located (the location as contended for by defendants), upon which sketch was written in form of a certificate under the seal and signature of the Commissioner of the General Land Office, the following: 'The above sketch is a true and correct copy from the map of Harris County, drawn by George H. Bringhurst, from actual surveys in the year 1840, and now an archive of this office.' Thereby injecting into the minds of the jury, as an established fact, and officially certified to be so, that in 1840 the surveyor named had been on the ground with his instruments and after an actual

survey, found the lines and corners of the Hugh Morgan and other surveys, as shown by said plat. If any such survey was then made, proof of same could not lawfully be made by the certificate of the Commissioner of the General Land Office, as was actually done in this case."

The copy of the map referred to in the assignment and which was put in evidence by the defendants, has the following certificate endorsed theron: "General Land Office, Austin, Texas, March 26, 1895. I, Andrew J. Baker, Commissioner of the General Land Office, of the State of Texas, do hereby certify that the above sketch of a portion of Harris County is a true and correct copy from the map of Harris County, drawn by Geo. H. Bringhurst from actual surveys in the year 1840, and now an archive of this office. In testimony whereof I hereunto set my hand and cause the seal of office to be affixed the day and date first above written. (Seal) Andrew J. Baker, Commissioner."

There is no bill of exception in the record, but the stenographer's transcript shows the following with reference to the introduction of the map and the objection made thereto by the plaintiff's counsel:

"Pendarvis. We next offer a certified sketch from the Land Office map of Harris County, of date 1840.

"Plaintiff. I object to the form of the certificate. If it was an ordinary certificate, I would not object. It attempts to state a fact which I think is incompetent.

"Pendarvis. Your Honor will remember that the same objection was made at the former trial, and the jury were instructed to disregard that part of the certificate.

"The Court. Overrule the objection. The court allowed the map to go to the jury without reference to the certificate, for the purpose only of location, in conection with testimony.

"Plaintiff. We except.

"Ewing. I will call the jury's attention to it. There is the Morgan, and there is the Nash."

The certificate of the Commissioner of the Land Office is admissible in evidence only as to facts "Contained in papers, documents or records" of his office, and can not be used as evidence of any fact otherwise known to the officer, which does not directly appear from the records of the office. Smithers v. Lowrance, 100 Texas, 77.

It does not affirmatively appear from the certificate above quoted that the fact that the map was made from actual surveys in 1840 is shown by any paper, document or record in the Land Office, and under the rule above stated the certificate was not admissible as evidence of such fact. We do not think, however, that the stenographer's report of the proceeding before set out shows that the certificate was offered or admitted as evidence of the fact that the map was "made from an actual survey in the year 1840." When the objection to the certificate was made counsel for the defendants reminded the court that on a former trial the map was admitted and the jury instructed to disregard the objectionable part of the certificate. The court then overruled the objection to the introduction of the map and, as we interpret from the statement above quoted,

only allowed the map to be considered by the jury. There was no error in admitting the map if the jury were told that they could not consider the objectionable statement in the certificate, and we think from what the record shows the jury must have understood that they could not consider the statement in the certificate as evidence. If plaintiff desired more explicit instructions to the jury not to consider the certificate, he should have requested them.

The second assignment of error is as follows: "The court erred, and prejudiced plaintiff's rights by admitting in evidence, over the objections of plaintiff, that part of the testimony of the witness Stimpson in answer to defendant's counsel, wherein he said that in 1896 one Gillespie, an old surveyor of Harris County, showed and pointed out to him the southwest corner of the Hugh Morgan league, right on the west bank of Cedar Bayou, on the north line of the Nash league, and then told him that Darius Gregg had showed him the corner and west line of the Morgan at that place in 1860, which evidence was admitted without showing that either Gillespie or Gregg had located said survey or had been shown the lines and corners by anyone who had actual or official knowledge of the true lines and corners thereof, and was hearsay. And this error was not cured by the attempted withdrawal of the evidence two days later by the court, at suggestion of defendants' counsel, after the jury had considered it in connection with defendants' other evidence."

The record shows that the testimony complained of in this assignment was withdrawn from the jury and the jury instructed by the court not to consider said testimony for any purpose. It does not appear from the record what time elapsed between the admission of the testimony and its withdrawal, but this is immaterial. We can not presume that the jury disregarded the positive instruction of the court and considered this testimony in arriving at their verdict. The assignment is therefore overruled. Church v. Waggoner, 78 Texas, 203.

The third and fourth assignments are asked to be considered together. These assignments with their accompanying propositions and statements are as follows:

"Third Assignment of Error. The court erred in admitting in evidence, over objection of plaintiff, the pleadings of counsel in cause No. 28,578."

"Fourth Assignment of Error. The court erred in sustaining objections and excluding the judgment rendered in cause 28,578, offered in evidence by plaintiff."

"First Proposition. The pleadings offered in evidence were not sworn to by Henry Wilkins, nor shown to have been known to him; the allegation as to location of Hugh Morgan league were not necessary or material in sustaining the suit, and were improvidently made by his counsel, and should not have been admitted for any purpose."

"Statement. The suit was against Jno. Chivers and others for land east of the land in controversy in this suit, in which petition of plaintiff, signed by his counsel, alleged that the Hugh Morgan league begins on west bank of Cedar Bayou, in north line of the

Nash, thence north 80 east 5000 vs; thence north 10 west 5000 vs; thence south 80 west 5000 vs; thence south 10 west 5000 vs. to beginning."

"Second Proposition. The defendant E. T. Shaffer was a purchaser from Jno. Chivers, one of the defendants in said cause 28,578, while the suit was pending, and in rebuttal of his evidence that he bought while suit was pending and the pleadings of plaintiff on file. The judgment rendered, binding on his vendor, Jno. Chivers, was also binding on E. T. Shaffer, and it showed a judgment locating the Hugh Morgan league with its southwest corner 3008 vs. west of Cedar Bayou, and was competent evidence as to defendant Shaffer."

"Statement. Defendant E. T. Shaffer testified: I bought the W. H. Scott survey from Jno. Chivers about 5th of November, 1901. Knew of the suit by Henry Wilkins, and that there was a claim of conflict with the Hugh Morgan league. Judgment locating southwest corner of Hugh Morgan 3008 vs. south 80 west from Cedar Bayou crossing of north line of Nash."

These assignments are not germaine to each other and therefore can not properly be presented together, but waiving this objection, we think neither assignment presents any error.

Statements in pleadings are admissible in evidence against the party filing such pleading without regard to whether the pleading is sworn to. It is always competent for the party against whom the pleading is offered to show that the statement was inadvertently made, or was not authorized by him, or made under a mistake of fact. Such explantaion may weaken or destroy the force of the statement in the pleading, but that is a question for the jury and affects the weight, not the admissibility of the pleading as evidence.

The statement under the fourth assignment does not show the materiality of the excluded evidence, and we can not look through a voluminous record in order to ascertain whether such evidence was material.

The court gave the jury the following charge: "1. The plaintiff sues to recover a tract of land which he claims is a part of a league of land granted by the Mexican government in 1835 to Hugh Morgan; and to that tract of land he has shown title, if it is a part of said Hugh Morgan league, but otherwise he has not.

"II. The defendants have disclaimed as to the parts of the land not claimed by them respectively, but have, as to the parts claimed by them, set up pleas of not guilty, under which they are at liberty to urge any defense which the facts may show.

"III. The burden is upon the plaintiff, under the law, to establish by a preponderance of the evidence that the land described in his petition, or some of it, is a part of said Hugh Morgan league; and if such fact is not shown by a preponderance of the evidence, then the plaintiff has failed to sustain the burden upon him, and can not recover.

"IV. If, therefore, you believe from a preponderance of the evidence that the land described in plaintiff's petition, or some of it, is a part of said Hugh Morgan league, then find for the plaintiff,

describing the land found for him, if less than the whole claimed in his petition, so as to identify it against G. H. Pendarvis, J. A. Clawson, P. C. Ulrich, C. W. Hahl, G. S. Guss, Steve Wolcik, Frank Rohla, C. H. Kinney, E. T. Shaffer, G. M. Parish, Guy A. Ridgeway, W. Dye, Carl Martens and unknown heirs of Carl Martens. .

"V.   If you do not believe it is shown by a preponderance of the evidence that the land described in plaintiff's petition, or some of it, is a part of said league of land originally granted to Hugh Morgan, then let your verdict be for the defendants.

"VI.   In your deliberations to determine the location of the league of land described in the grant to Hugh Morgan, and whether or not it includes the land in controversy, you will search for the footsteps of the surveyor in locating the Hugh Morgan league, and in this search you will be guided, first, by natural objects, such as streams and timber; second, by artificial objects, such as the fixed and established line of an adjoining survey, about which there is no dispute, and then, by course and distance; yet in this case you will consider all the evidence and follow the actual survey of said Hugh Morgan league as it was made, if in fact made by the surveyor, to decide the location of said league, and whether or not it included, in whole or in part, the land described in plaintiff's petition.

"VII.   The jury are the exclusive judges, under the rules of law given, of the weight and credibility of the evidence; and by your conclusions thereon, under the court's direction as to the law, let the verdict be determined."

Under his fifth and fourteenth assignments of error, plaintiff assails this charge as a whole on the ground that it is so worded as to convey to the minds of the jury "a subtile distrust of plaintiff's contention as compared with that of defendants" . . . "and the effect thereof upon the jury was to obscure the rights and magnify the burdens of plaintiff and cast suspicion upon plaintiff's contention for location of the land, and by contrast with plaintiff's defendants' rights were presented most favorably." The charge is not upon the weight of the evidence and is not so framed as to have had the effect upon the jury claimed by plaintiff. The law gives the defendant an advantage in requiring a plaintiff to prove his case by a preponderance of the evidence, and this charge correctly informed the jury that such burden was upon the plaintiff in this case, and we do not think the instruction as to the burden of proof and the preponderance of evidence was unduly emphasized.

The eighteenth assignment complains of the action of the court in reading the charge to the jury in the absence of counsel for plaintiff and without his having an opportunity to know before the return of the verdict what instructions had been given the jury: This assignment is not supported by any statement and no bill of exceptions is referred to. In the absence of a statement and bill of exceptions the assignment will not be considered.

The sixth and seventh assignments of error complain of the fourth paragraph of the charge above set out on the ground that it reiterates the instruction that plaintiff's right of recovery depends up-

on the finding that the preponderance of the evidence is in his favor, and said right is "further obscured and made more difficult to state by the names of fourteen defendants against whom the jury were instructed to return a verdict if they found in favor of plaintiff's contention, when in law and fact it was wholly unnecessary to give the names of any defendant; and when in fact six of the parties named in said paragraph as defendants were not before the court on the trial of the case."

The first ground of this objection to the charge has been answered in disposing of the fifth and fourteenth assignments. We do not think this charge required the jury to state in their verdict the names of the defendants against whom they found in event they found for plaintiff, but if it should be so interpreted it could not have injured plaintiff. It certainly can not be construed as requiring the jury to fix the boundaries of each of the several portions of the land claimed by the defendants which the jury might find plaintiff entitled to recover, but could only mean that in event the jury found for plaintiff for a portion of the land in controversy they should fix the location of the west boundary line of the Morgan, so that the land recovered of the defendants might be identified, and this was a proper instruction. The third objection to this charge can not be sustained because the fact upon which it is based is contradicted by the record. The defendants named in the charge who are claimed by plaintiff not to have been parties on the trial of the case were original defendants in the suit. It further appears that a former judgment was rendered in this cause in favor of plaintiff against all of the defendants in error and that upon appeal said judgment was reversed as to all of said defendants. If there is anything in the record indicating that any of the defendants named in the charge were not defendants at the trial from which this writ of error is prosecuted, or that a plea of *res adjudicata* was presented or could have been maintained against any of said defendants, such facts are not shown by the statement under the assignments.

The nineteenth assignment of error presents two separate and distinct matters and for that reason we are not required to consider it. This assignment is also grouped and presented with the fifth and sixth assignments and not being germane thereto none of said assignments require our consideration. We have, however, already passed upon the fifth and sixth assignments and have considered the points presented by the nineteenth notwithstanding its insufficiency in the respects above indicated. We think if properly presented the matters complained of by this assignment would not constitute error, and the assignment is overruled.

The objections to the charge urged under the eighth assignment have been disposed of in our discussion of previous assignments, and this assignment is also overruled.

The ninth and tenth assignments complain of that portion of the sixth paragraph of the charge in which the jury are instructed as to the relative dignity of calls in the field notes in ascertaining the location of the survey. The contentions under these assignments are

that under the facts in this case the call for timber should not be regarded as of higher dignity than the calls for course and distance, and that the instruction that the call for an established line of an adjoining survey was of higher dignity than the calls for course and distance was destructive of plaintiff's rights, in that the jury must have understood from such instruction that the southwest corner of the Morgan survey could not be located west of the northwest corner of the Nash survey, the undisputed evidence showing that the north line of the Nash was known and established and the field notes of the Morgan calling for its southwest corner in the north line of the Nash. Neither of these assignments should be sustained. It was probably unnecessary for the court to instruct the jury as to the relative dignity of the calls, but the charge correctly states the rule upon the subject, and the jury having been told expressly in this paragraph of the charge that they must consider all of the evidence "and follow the actual survey of said Hugh Morgan league as it was made, if in fact made, by the surveyor," could not have been misled by the charge.

What has been here said, disposes of the questions raised by the fifteenth and twentieth assignments, and these assignments can not be sustained.

The twelfth assignment complains of the clause "if in fact made" in the paragraph of the charge above quoted, on the ground that said clause submits the issue of whether the original survey of the Morgan league was actually made on the ground, when no such issue is raised by the evidence. We can not agree with counsel that the evidence does not raise the issue of an actual survey. In the absence of evidence to the contrary the presumption is that an actual survey was made. But the fact that the surveyor did not go on the ground and measure and mark the lines and corners of the survey may be shown by circumstances, and under the evidence in this case the jury might have found that the lines of the survey were not actually run on the ground by the surveyor who returned the field notes upon which the grant of the Morgan league was made.

It is unnecessary to discuss the remaining assignments of error separately or in detail. All of them assail the charge of the court and after due consideration of each we have found no merit in any of them.

The judgment of the court below should be affirmed and it has been so ordered.

*Affirmed.*