# APRIL, 1922

---

D. P. CLEMENTS V. J. T. ROBISON, COMMISSIONER OF THE GENERAL
LAND OFFICE.

No. 3574.   Decided April 5, 1922.

(239 S. W., 902.)

**1.—School Land—Minerals—Classification.**

Section 2 of the Act of March 29, 1889, Laws, 21st Leg., ch. 100, p. 116, in providing for designation by the State Geological and mineralogical Survey of such public lands as were found to be mineral bearing (in which case the minerals were to be reserved to the State in their sale) was not exclusive in its nature and did not preclude the Commissioner of the General Land Office from resorting to other means of ascertaining whether a particular tract was mineral bearing and classifying it accordingly. It gave the Commissioner authority to sell the lands, and to reserve the minerals therein to the State though they had never been designated as mineral bearing lands by such survey. Colquit-Tignor Mining Co. v. Rogan, 95 Texas, 452. (Pp. 454, 455).

**2.—Same—Acts of Commissioner.**

The presumption is to be entertained that the Commissioner of the General Land Office, in classifying school land as mineral bearing and reserving the mineral rights to the State in its sale, acted in a legal way and upon necessary data, knowledge and information. Pleadings here considered are *held* insufficient to show that the Commissioner acted arbitrarily and without proper investigation and information. (Pp. 455, 456).

**3.—Case Stated.**

A tract of school land in Reeves County had been classified and appraised, up to the year 1901, on the records of the Land Office, as "dry grazing." In that year, on information as to mineral discoveries in that county, the Commissioner reclassified it as "mineral" and "dry grazing" and reappraised it. In February, 1907, the Land Commissioner reclassified the land as "mineral" and "dry grazing," and reappraised it at a reduced figure. On application to purchase (March, 1907) under this classification, the land was awarded to the applicant in April, he executing his release to the State of all rights to minerals in the land, as required by the Commissioner. Relator, who had acquired such purchaser's rights in the land, sought to injoin the Land Commissioner from issuing permit to others to prospect for oil on such land. *Held*, that the minerals rights did not pass by such sale, but were reserved to the State; that the Commissioner acted within his authority in reclassifying, and reserving such mineral rights in the sale, and in granting permit to prospect; that his acts were presumed to be lawful and proper, and were not shown by the petition of relator to be arbitrary or unwarranted by the information which he possessed; and that mandamus must be refused. (Pp. 453-456).

Original application to the Supreme Court for writ of mandamus against Robison, as Commissioner of the General Land Office, with whom W. W. Camp and some nine others were joined as respondents.

*Bishop, Scott & Sparks,* anu *Charles Rogan,* for relator.
By Mr. Rogan.

As public officers are only agents of the State, they possess only such powers as are conferred upon them by the Legislature, and no more. They can neither add to nor substract from the law. Easton v. Fergerson, 23 S. W., 918; Bayha v. Carter, 26 S. W., 137; Metzler v. Johnson, 20 S. W., 1116; Orange County v. T. & N. O. Ry. Co., 80 S. W., 670; H. T. & B. Ry. Co. v. Randolph, 24 Texas, 317; Jones v. Muisbach, 26 Texas, 235; Whiteside v. United States, 93 U. S., 247; 23 L. ed. 882; Pierce v. U. S., 7 Wall (U. S.) 666; 19 L. ed. 169.

It will be observed that the Legislature vested the Commissioner of the General Land Office with power to classify public school and asylum lands into agricultural, grazing or timbered land, according to the facts in each particular case, to be sold, when so classified and valued, to actual settlers only. Acts 1895, page 63, Sections 1, 2, 3, 4, and 5; R. S. 1895, Ch. 12A, Title 87, Articles 4218 b and 4218 c; 4218 d, 4218 e and 4218 f. Acts 1897, page 184; Acts of 1905, page 159, Sections 1, 2, and 3; Rev. Stats., 1895, Arts. 3498a, 3498b, 3498c.

Every Legislature since 1895, except the last, has passed some law relating to the public school land, and it has never seen fit to vest the Commissioner of the General Land Office with the authority to designate or classify it as mineral land. The geological and mineralogical survey was the only agency in whom such power was vested.

This was the law upon the subject when the tract of land in question was sold by the State to H. W. Case in March 1907. This tract had never been examined and found to be mineral bearing and so designated by the geological and mineralogical survey as provided by law. As the Commissioner of the General Land Office had no such authority, his act in so doing was, and is illegal and void.

It was clearly the intent of the Legislature to include only such of the school and other public lands under the Act relating exclusively to mines and mining, as were then known to contain mineral, ѕ nd such as may thereafter be found to be apparently mineral bearing, and so designated by the geological and mineralogical survey upon examination. If it was not so examined and designated, as no such power was ever invested in the Commissioner of the General Land Office so to do, it is evident that it was the intention of the Legislature that it should be sold as dry grazing land, under its original classification. Green v. Robison, 210 S. W., 498; Schendell v. Rogan, 94 Texas, 585.

It being the plain intention of the Legislature to sell it without reservations, the Commissioner had no power to require H. W. Case

to file in the Land Office a waiver of the mineral rights to the State, as a condition precedent to its sale. Such was arbitrary and unlawful. The waiver was obtained under duress and without consideration. Therefore, when the land was sold to Case, he acquired full title and a vested right in both land and mineral upon compliance by him and his assigns of settlement, occupancy and improvements, the payment of the annual interest and the balance of the purchase money to the State when due.

As the tract of land in suit had never been legally brought within the provisions of the law relating to Mines and Mining, the Commissioner of the General Land Office had no authority to issue a permit to Edwin F. Smith to prospect for oil and gas under the Act approved March 16th, 1917. That act has reference to only such land as had been brought within the provisions of Title 71, R. S. 1895.

By Mr. Scott.

We submit that unless the land was known to be mineral land, or to be mineral bearing, that each and every act of the Commissioner in classifying said land as mineral and in requiring Case to file such waivers were unauthorized by law and void. Eastin v. Ferguson, 23 S. W., 919; H. T. & B. Ry. Co. v. Randolph, 24 Texas, 333; Orange Co. v. T. & N. O. Ry. Co., 80 S. W., 670; Day Land & Cattle Co. v. State, 68 Texas, 541.

It was definitely settled by the Supreme Court of this State in Schendell v. Rogan, 94 Texas, 585, that the mineral laws and the reservation of rights to minerals in lands belonging to the State related only to such lands as were known to possess mineral deposits or were apparently mineral-bearing lands. Only in lands which fall within that class were the rights to the minerals retained by the State. This is the construction placed upon that holding of the court in the case of Greene v. Robison, 210 S. W., page 501.

We respectfully submit that the record in this case discloses that there was no information furnished to the Commissioner of the Land Office upon which to act, but that his classification was a blanket one made arbitrarily and based on the sole act that it was public land and he was the Commissioner of the Land Office; and construing the act as giving him this power, he proceeded to exercise it; whereas, under the law he was without authority to classify the land as mineral without an investigation and without proof of some substantial facts upon which he would be authorized to determine the question; and under the authority last cited, we think that the mandamus should be granted.

*W. A. Keeling*, Attorney-General, and *E. F. Smith*, Assistant, for respondent.

In an action for mandamus the legal right of relator to the performance of the particular act of which performance is sought to be

compelled must be clear and complete. 26 Cyc., 151; Ex parte Cutting, 94 U. S., 14; Commissioner v. Smith, 5 Texas, 71; Houston & T. C. R. Co. v. Randolph, 24 Texas, 317; Texas Mex. R. Co. v. Jarvis, 80 Texas, 456; Erp v. Robison, 155 S. W., 180; Matthaei v. Clark, 216 S. W., 856; Westerman v. Mims, 227 S. W., 178.

Under the facts of this case the Land Commissioner not only had the authority to designate or class said tract of land as "mineral" and to reserve the minerals when he sold the same, but he would have been guilty of gross neglect of duty had he failed to do so. Act of April 12, 1883, Ch. 88; Act of April 14, 1883, Ch. 97; Act of April 1, 1887, Ch. 99; Act of March 29, 1889, Ch. 100; Act of May 2, 1893, Ch. 77; Acts of 1895, Chs. 47, 48, 147; Act of Feb. 23, 1900, Ch. 11; Act of April 19, 1901, Ch. 125; Act of April 15, 1905, Ch. 103; Schendell v. Rogan, 94 Texas, 585; Greene v. Robison, 210 S. W., 498; Cox v. Robison, 150 S. W., 1149.

In the case now before this court the Land Commissioner had information that this was mineral land, for Mrs. Wadley in 1901 had applied to purchase the oil in the land. Oil in place is a mineral. Cox v. Robison, 150 S. W., 1149; Southern Oil Co. v. Colquitt, 69 S. W., 169; Ohio Oil Co. v. Indiana, 177 U. S., 190; Murrey v. Allred, 100 Tenn., 100; 27 Cyc., 629; Thornton on Oil and Gas, Second Edition, Sections 18, 19 and 20.

Acting upon the information in his possession the Land Commissioner designated the land as mineral and the purchaser from the State, H. W. Case, recognized the status of the land and executed a waiver to the minerals, and so far as the records show the execution of this waiver was a voluntary act and done without protest.

This court has often given great weight to the construction placed on legislative acts by the officers of the government charged with the duty of administering such acts. The commissioners of the General Land Office, since the decision in the Colquitt case, supra, have consistently interpreted the Mineral and Sales Acts as giving them the authority to designate land as mineral, known or believed by them to contain minerals, and to sell such land with a reservation of the minerals therein and thereon to the State. The public has acquiesced in such action. Millions of acres of land has been so designated.

The Legislature has concurred in this interpretation of its acts, as is shown by the many acts enacted for disposing of or developing the mineral reserved to the State in these lands. Under the Mineral Permit Act of 1913, as amended by the Act of 1917, the State has issued oil and gas permits on more than five million acres of land in which the minerals had been reserved. The State receives an annual rental of ten cents an acre from these permits, thus obtaining an annual revenue of more than five hundred thousand dollars.

Mr. Justice PIERSON delivered the opinion of the court.

On the 4th day of April, 1907, Section No. 40, Block 2, H. & G. N. R. R. Company Certificate No. 7/1404, School Land in Reeves County, was awarded to H. W. Case on his application of date March 15, 1907. At that time the classification of said Section upon the records of the Land Office at Austin and of the County Clerk of Reeves County was "mineral and dry grazing." Case applied to purchase it under that classification, and on March 16, 1907, filed in the Land Office his waiver to any minerals that might be in the land.

This Section prior to May 20, 1901, was classified as "dry grazing" and valued at $1 per acre. On that date, May 20, 1901, one Mrs. E. D. Wadley filed with the County Surveyor of Reeves County an application to purchase this Section as oil land, and her application was filed in the Land Office on the 3rd day of June, 1901. Same was accepted by the Land Commissioner, and the County Clerk of Reeves County was advised that said tract of land was off the market for one year. About this time, and prior thereto, in 1900 or 1901, the discovery of oil was reported in Reeves County, creating considerable excitement, and much land in these counties was filed on as oil land. Thereafter, on the 13th day of September, 1901, the Land Commissioner sent to the County Clerk of Reeves County a classification of this land showing it to be classified as "dry grazing." This was followed on October 21, 1901, by a letter from the Land Commissioner to the County Clerk of Reeves County, instructing him to reappraise all public school land in Reeves County and that "such lands only as were known to be mineral lands and filed on as such" were to be classified as "mineral." Closely following this letter, on the 30th day of November, 1901, Honorable Charles Rogan, Land Commissioner, reclassified this land and sent a new classification and appraisement to the County Clerk of Reeves County, which showed this tract to have been classified as "mineral," valued at $25 per acre, and "dry graz.," valued at $100 per acre.

On or about the 12th day of February, 1907, said original grantee, H. W. Case, filed in the General Land Office his affidavit to the effect that there were no minerals on said tract of land, so far as he knew or had reason to believe, or did believe.

On February 14, 1907, the Land Commissioner again classified this tract of land as "mineral and dry grazing," and valued the same at $2.00 per acre, and sent the proper notice of classification and valuation to the County Clerk of Reeves County. It was upon this classification and valuation that the land was awarded to H. W. Case on the 4th day of April, 1907.

On the 16th of March, 1907, and prior to the award herein, said H. W. Case again filed his affidavit to the effect that to the best of his knowledge and belief there were no minerals in this land, and,

further, "that said land has heretofore been classified as. mineral land, and believing there to be no mineral thereon, and hereby waiving all right to the minerals on said section to the State of Texas, should there be any mineral deposits of any character hereafter found in or on said land, and in the event of a sale to me of the foregoing land, it is expressly agreed and understood that I acquire no right, title, or other interest in or to any minerals that are now or may hereafter be known or found to exist in or on said land."

An oil permit was issued by the Land Commissioner to Edwin F. Smith to this land on August 13, 1919.

This suit was brought by relator, D. P. Clements, who is the successor in title to this land through mesne conveyances from the original grantee, for a writ of mandamus, in which he prays that the Commissioner of the General Land Office be required to cancel the oil permit mentioned above; to change the records of his office so as to show said tract of land to be classified as grazing only; to cancel a certain "combination contract" in which the permit on this land is included, to the extent that said "combination contract" embraces this land; and to perpetually enjoin the Land Commissioner from issuing or executing any oil, gas, or other mineral permits or mineral leases on this land, unless same should thereafter be forfeited to the State for any reason.

Relator alleges as grounds for the relief sought that the Commissioner of the General Land Office on November 30, 1901, unlawfully changed the classification of this land from "dry grazing" to "mineral and dry grazing," valuing the minerals at $25.00 per acre and the land at $100.00 per acre; that said land had never been examined by the Geological and Mineralogical Survey and found to be mineral bearing, and had not been designated by said Survey as mineral land as provided by Articles 3482 and 3498b, Title 71, R. C. S. of 1895; and that said Commissioner, because of the reported discovery of gold in what are known as the Barrilla Mountains, some forty or fifty miles distant from this land, arbitrarily and unlawfully so classified said land, without making or causing to be made any investigation in the premises, but acting solely upon said report.

The question presented is: Under the facts of this case, did the Land Commissioner have the authority to designate or classify said tract of land as mineral, and in the award to H. W. Case to reserve the minerals to the fund to which the land belonged?

The relator in his petition asserts that the Commissioner of the General Land Office had no authority to classify lands as mineral bearing unless same had been examined by the Geological and Mineralogical Survey and designated by it as mineral. Section 2 of Chapter 100 of the Acts of 1889, providing that the Geological and

Mineralogical Survey should examine the lands as to minerals and make designations, was not exclusive in its nature. The Commissioner of the General Land Office was not precluded from resorting to other means of ascertaining whether or not any particular tract of land was mineral bearing; and upon examination, investigation, or information obtained might classify lands accordingly.

Section 15 of said Chapter 100, Act approved March 29, 1889, (Mineral Act), in which Act are found the provisions relating to the Geological and Mineralogical Survey, same being brought forward in the Revised Statutes of 1895, provides as follows:

"Whenever any application shall be made to buy or obtain title to any of the lands embraced in section one of this act, except where the application is made under this act, the applicant shall make oath that there is not, to the best of his knowledge and belief, any of the mineral embraced in this act thereon, *and when the Commissioner has any doubt in relation to the matter he shall forbear action until he is satisfied. And any sale or disposition of said lands shall be understood to be with a reservation of the mineral thereon to be subject to location as herein provided.*"

The language of this section removes all doubt as to the authority of the Land Commissioner to sell the lands mentioned in the Act, which included public school land, and to reserve the minerals to the State for the use of the fund to which the lands belonged, even though the lands had never been examined and designated as mineral bearing by the Geological and Mineralogical Survey.

That the Commissioner has such authority is well settled by this court in the case of Colquitt-Tigner Mining Co. vs. Rogan, 95 Texas, 452, 68 S. W., 154. For a full and satisfactory discussion of that question, we refer especially to Judge Williams' opinion in that case.

The above opinion is based upon the law and sound reasoning, and supports the correct view that the Commissioner of the General Land Office had authority to designate and classify lands as mineral lands and to reclassify and reappraise them as such, upon investigation or satisfactory information obtained, and that it was also the intention of the Legislature that the minerals in these lands should be reserved to the fund to which the lands belonged "whenever it became known to the Commissioner that they contain valuable minerals of the kind mentioned in the act." Further discussion of this question is unnecessary.

The relator contends, however, that even though the Commissioner had authority to classify the tract of land in controversy as mineral on November 30, 1901, he did so without examination and without knowledge that there were mineral deposits in this land and in its vicinity, but arbitrarily classified all the lands within a wide area as mineral lands, for the purpose of withdrawing them from the market,

because of the supposed discovery of gold in the Barrilla Mountains, and that his acts were arbitrary, without authority, and void. The facts do not support this contention.

Acts of administrative officers must be reasonably construed. It cannot be said that it was necessary for the Commissioner to examine each tract in person. The presumption is that the Commissioner acted not only within the scope of his authority, but in a legal way, and, in the absence of a showing to the contrary, that he had all the necessary data, knowledge, and information upon which to base his action and exercise his discretion.

In the case of Robert G. Johnson et al. v. J. T. Robison, Commissioner, et al., reported March 22, 1922, [*ante*, p. 438, 240 S. W., 300], opinion by Special Chief Justice S. J. Brooks, Special Associate Justice Cary Abney and Associate Justice Pierson concurring, this court held that where land was awarded as grazing land upon an application designating it as grazing land, and the classification books of the Land Office showed a notation "dry grazing," these acts of the Commissioner constituted a classification as dry grazing; in other words, that acts of an administrative officer must be given effect, and, unless otherwise shown, be held to have been done according to the provisions and requirements relating thereto. Gulf Production Co. v. State of Texas, 231 S. W., 124, writ of error denied; Corrigan v. Fitzsimmons, 97 Texas, 595, 80 S. W., 989; Smithers v. Lowrance, 100 Texas, 77, 93 S. W., 1064.

The facts of this case, as alleged in the pleadings of both parties, do not support relator's contention that the Land Commissioner acted without proper investigation or information, but, on the contrary, show that his acts were based upon necessary information. We will not review the facts on this point, further than to refer to the fact that in 1900 and 1901, and prior to the time when this land was classified and again reclassified as mineral bearing land, the discovery of oil was reported in Reeves County and in the vicinity of this land, and that much land in that neighborhood was filed on as oil land, and that application to purchase this section of land as oil land was made on the 20th day of May, 1901. The transactions with the General Land Office regarding minerals in this tract of land and other tracts in the neighborhood were certainly sufficient to call attention to the mineral indications in said section. Instead of rebutting the presumption above referred to, the facts support the conclusion that the Land Commissioner had sufficient information and knowledge upon which to classify said land as mineral land.

It being determined herein that relator through mesne conveyances from the original grantee, H. W. Case, acquired no interest in the minerals in said land, the further questions raised in his petition become immaterial.

The writ of mandamus is denied.