HERBERT NOBLE ET AL. v. J. T. ROBISON, COMMISSIONER OF GENERAL LAND OFFICE ET AL.

No. 5371.   Decided May 3, 1922.

(240 S. W., 901.)

Public Lands—Classification—Sale—Mineral Rights.

Where several different classifications and appraisements of school land for sale by the Commissioner of the General Land Office left it in doubt whether the land was classified as "dry grazing" or as "mineral and dry grazing," but the purchaser treated it as classified under the latter description and accompanied his application to buy by an affidavit that it did not contain minerals and of his willingness to accept the sale with a reserva-

tion of minerals to the State, an acceptance of his offer did not confer rights to minerals which might be discovered thereon. Such purchaser could not maintain action for mandamus requiring the Commissioner to cancel a permit subsequently issued by him to another to prospect thereon for oil and natural gas. (Pp. 25-30).

Motion by Noble and others for leave to file in the Supreme Court a petition for writ of mandamus against the Commissioner of the General Land Office requiring cancellation of a permit to prospect for oil and natural gas on a section of school land claimed by relators as purchasers from the State.

*James H. Kirkpatrick* and *G. E. Smedley,* for relators, cited: Act of April 15, 1905 (Laws, 1905, ch. 103, p. 159; Act of April 19, 1901 (Laws, 1901, p. 292); Rev. Stats., 1895, art. 4218e as amended by Act of 1897; Rev. Stats., 1895, art. 4218g; Coates v. Bush, 56 S. W., 617; Steward v. Wagley, 68 S. W., 297; Bowerman v. Pope, 61 S. W., 330, 75 S. W., 1093; Scott v. Blackburn, 47 S. W., 480; Gulf Production Co. v. State, 231 S. W., 124; Schendell v. Rogan, 94 Texas, 585; Greene v. Robison, 109 Texas, 367; Pohle v. Robertson, 102 Texas, 274; Metzler v. Johnson, 20 S. W., 1116; Kempner v. State, 72 S. W., 888; Day Ld. & C. Co. v. State, 68 Texas, 541; Harper v. Terrell, 96 Texas, 479; Johnson v. Robinson, 111 Texas, 438.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Relators ask leave to file a petition for mandamus to compel the cancellation of an oil and gas permit on 640 acres of land in Pecos County. The facts relied on are stated in Relators' motion in language substantially as follows:

The section of land was unsold, surveyed public school land until it was purchased from the State by Fred Gibson. On September 27, 1901, the Commissioner of the General Land Office, in pursuance of a requirement in the Act of 1901 that he make and send to the county clerks of all the counties in the State lists of all the unsold public school lands in such counties showing the classification and appraisement of all such unsold school lands, prepared a list of the unsold school lands in Pecos County and forwarded it to the County Clerk of said County. In said list, the section of land described in the Petition appeared as unsold and classified as dry grazing, and appraised at $1.00 per acre. This list was received by the County Clerk of Pecos County and was duly entered in a well-bound book in his office constituting the classification and sales record of public school lands in said County.

On November 30, 1901, Commissioner Rogan of the General Land Office reclassified a large number of sections in the west part of Texas,

among them being the section here in question. He made out a classification list, which showed this section as follows:

> "Mineral                 $25.00
> Dry grazing         $100.00"

A copy of this list was mailed to the County Clerk of Pecos County and was filed by such clerk. The data in this list was not recorded by the Clerk, that is, it was not noted in his record of classification and sales. That record continued to show the dry grazing classification of 1901 and the valuation of $1.00.

The section in question, together with a number of others, was leased for grazing in 1904, and subsequently, on November 24, 1906, this lease was assigned to Fred Gibson.

On December 11, 1906, Fred Gibson filed in the General Land Office his application, under Section 5 of the Act of 1905, to purchase eight sections, including the section in question, out of this lease. In this application he requests the Commissioner to "classify and value according to law the following surveys in Pecos County," and then describes the eight sections.

On December 12, 1906, the Commissioner of the General Land Office wrote a letter to Fred Gibson, in which, after reciting the receipt of the foregoing application, he informed him that three of the sections so designated would be subject to sale "as dry grazing at $1.50 per acre each," but that "the balance of the sections mentioned by you are classed as minerals and valued at $25.00 per acre each." Such "balance" included the section described in the petition.

Between the date on which this letter was written and the date January 3, 1907, the assignee Fred Gibson filed in the General Land Office an affidavit, verified the 19th of December, 1906, in which three persons, swearing that they are in no wise interested in the purchase of the lands, swear "that there are no minerals embraced in Title LXXI of the Revised Statutes of 1895 on the following described surveys," describing the five surveys including the section in question. This affidavit is now found in the General Land Office.

On January 3, 1907, a classification was made by the Commissioner, including the section in question and a number of other sections, and a list prepared showing such lands and the classifications. In this list the sections in question is shown as "Min. and dry graz." with a valuation of $1.50 per acre. A copy of this list was mailed to the County Clerk of Pecos County and was filed in his office on the eighth day of January, 1907, at 8 A. M., but the clerk did not enter the mineral classification on his classification and sales record.

On January 4, 1907, the Commissioner wrote the following letter to Fred Gibson:

"General Land Office
State of Texas,
Austin.

January 4th, 1907.

John J. Terrell, Commissioner.
J. T. Robison, Chief Clerk.
   Mr. Fred Gibson,
    Ft. Stockton, Texas.

Dear Sir:—

Replying to yours of the 7th Ult. in which you as the assignee of lease 36362 state that you desire to purchase sections 2, 8, 12, 14 and 18, block 141, T. & St. L. Ry. Co. Pecos County you are advised that those tracts will be subject to sale to you as designated as dry grazing at $1.50 per acre provided by Act April 15th, 1905.

        Yours truly,

Stubblefield.

          Commissioner.''

The above letter of January 4, 1907, was copied in the letter press copy books kept in the General Land Office and a carbon copy of the letter was retained in the General Land Office and was filed among the papers relating to the lease above referred to.

A duplicate, signed by the Commissioner, of the letter of the fourth of January, 1907, was mailed to the County Clerk of Pecos County, was received by that Clerk, and was filed by him on the eighth of January, 1907, at 8 A. M., among the records of his office relating to classification and sales of school land.

On the eighth day of January, 1907, at 8 A. M., the County Clerk of Pecos County thus received two documents from the General Land Office. The first document was the list of January 3, 1907. This list stated a classification of mineral and dry grazing, and showed a valuation of $1.50. The second document was the carbon copy of the letter of January 4, 1907. This carbon stated a classification of dry grazing with a valuation of $1.50.

At that time the County Clerk's Classification and Sales Record showed, in respect to the section in question, a classification of dry grazing and a valuation of $1.00; being the original September, 1901, classification by Commissioner Rogan. On the eighth day of January, 1907, the County Clerk noted in this record a new valuation of $1.50. He did not change the dry grazing classification shown on his record and his record has continued to show a dry grazing classification and a valuation of $1.50.

On the eighth day of January, 1907, the assignee, Fred Gibson, verified eight applications for the eight sections described in his application as assignee, including the section in question. In the application for the land in question the classification is given as

dry grazing and the price at $1.50 per acre. The application for the section in question, being survey No. 12, and seven other applications for other sections were filed in the General Land Office on January 11, 1907. The application for section 12 bore an endorsement made in the General Land Office as follows: "Class: D. G. & M.," evidently meaning that the section was classified as dry grazing and mineral land.

The application was accompanied by an affidavit as follows:

The State of Texas, County of Pecos.—Before me, the undersigned authority on this day personally appeared Fred Gibson, who, after being by me duly sworn according to law, deposes and says that to the best of his knowledge and belief there are no minerals embraced in Title LXXI of the Revised Statutes of 1895 on

| Sur | Bl | Cert No. | Orig Grantee | Acres | County |
|---|---|---|---|---|---|
| 2 | 141 | 269 | T. & S. L. Rwy. Co. | 640 | Pecos |
| 8 | 141 | 272 | Do | 640 | Do |
| 12 | 141 | 274 | Do | 640 | Do |
| 14 | ·141 | 275 | Do | 640 | Do |
| 18 | 141 | 277 | Do | 640 | Do |

That said land has heretofore been classed as mineral land, and believing that there is no mineral thereon, and hereby waiving all rights to the minerals on said surveys to the State of Texas, should there be any mineral deposits of any character hereafter found in or on said land, and in the event of a sale to me of the foregoing lands or any part thereof, it is expressly agreed and understood that I acquire no right, title or interest in or to any minerals that are now or may hereafter be known or found to exist in or on said land.

Sworn to and subscribed before me this 8th day of January, 1907.
(Seal)                                    Fred Gibson.

O. W. Williams, Notary Public
Pecos Co., Texas.

The County Clerk of Pecos County was duly notified of the sale to Fred Gibson, and noted in his record of unsold lands "Fred Gibson" as the purchaser of these five sections, and "January 11, 1917" as the date of sale. Due settlement was made by the purchaser and the conditions as to occupancy and improvement performed. The interest payments have been made and the sale is in good standing on the records of the General Land Office. The relators, through regular chain of title, are the owners of all the rights acquired by Fred Gibson in his purchase of the land in question.

The West half of one of the sections of land purchased by Gibson at the time he purchased the section in question, and the facts as to the classification of which are the same as the facts as to the section in question, was patented by the State in 1910, and in the patent no

reference was made to the minerals and no recital appeared undertaking to reserve the minerals.

On January 3, 1920, the Respondent, the Commissioner of the General Land Office, upon application theretofore filed, issued to one Stokes, under the Mineral Act of 1917, an oil and gas permit on the land in question, treating the land as if sold by the State with reservation of the minerals. The Respondent, Grant Oil Corporation of Texas, is now by assignment the owner of that permit. The Commissioner has refused to comply with the demand of Relators to cancel the said permit and to make entries on the records of his office showing that the Relators are the owners of the oil, gas and other minerals in the land and that the sale by the State was without reservation of minerals.

The further allegations are made in the petition that the land has never been examined and designated as mineral by the Geological and Mineralogical Survey and that at the time the attempted mineral classifications of Nov. 30, 1901, and January 3, 1907, were made by the Commissioner they were made without his having examined or inspected, or caused the land to be examined or inspected, for the purpose of determining whether or not it was mineral land, and that when the land was sold by the State to Gibson it was not known to be mineral land or mineral bearing.

After due consideration, we have concluded to refuse leave to file Relators' petition.

In so far as the Relators base their right to the award of the mandamus on their attack on the validity of classifications of the section of land as mineral by the Commissioner of the General Land Office, on Nov. 30, 1901 and January 3, 1907, no more need be said than to refer to the opinions of this court recently delivered by Special Chief Justice Brooks in the case of Johnson v. Robison, Commissioner (111 Texas, 438, 240 S. W., 300), and by Associate Justice Pierson in the case of Clements v. Robison, Commissioner (111 Texas, 449, 239 S. W., 902). These opinions are decisive in maintaining the validity of these classifications as against Relators' attack.

Relators' principal contention is that their vendor, Fred Gibson, became the purchaser of this land under its classification by the Land Commissioner, as dry grazing land, on the 4th day of January, 1907. There would be much force in this contention, supported by the Land Commissioner's letter of January 4, 1907, together with the transmission of a copy thereof to the County Clerk, were it not for the fact that the Land Commissioner's acts as a whole created uncertainty as to his real intention with respect to the classification of this land as ''dry grazing and mineral'' or as ''dry grazing'' alone, at the time Gibson forwarded his application, and Gibson himself then construed the Commissioner's classification of the land as ''dry grazing and

mineral.'' We do not think that Gibson or his assignees could there-
after in good conscience assert that they purchased the land under
any other classification. The fact that Gibson intended and agreed
to buy the land under its mineral classification is made plain by the
affidavit which accompanied his application. The affidavit is to the
effect that the land had been classed as mineral land; that he waived
all rights to the minerals; and that, in the event of a sale of the land
to him, he expressly agreed that he should acquire no right, title or
interest in or to any minerals then or thereafter known or found
in or on the land. This affidavit seems to have been made under
article 3495, in Title LXXI, of the Revised Statutes of 1895, which
provided that when application was made to buy any of the public
school, university, asylum, or public lands containing valuable mineral
deposits, ''except where the application is made under this title, the
applicant shall make oath that there is not, to the best of his knowl-
edge and belief, any of the mineral embraced in this title thereon,
and when the commissioner has any doubt in relation to the matter
he shall forbear action until he is satisfied. And any sale or dispo-
sition of said lands shall be understood to be with a reservation of
the mineral thereon to be subject to location as herein provided.''

The Land Commissioner treated the application, together with the
affidavit, as relating to land under mineral classification, as shown
by the endorsement on the application, and by the issuance of the oil
and gas permit.

With both the applicant and the Land Commissioner dealing with
the land at the date of, and subsequent to, the application, as under
a mineral classification and as subject to the terms of article 3495,
the minerals must be considered as reserved by the State. It follows
that the oil and gas permit was not invalid and hence we refuse the
motion for permission to file the petition for mandamus.

(Chief Justice Cureton took no part in this decision).