# JANUARY, 1925.

O. B. Sawyer v. J. T. Robison Commissioner of General Land Office et al.

Motion No. 6334.  Decided January 28, 1925.

(268 S. W., 151).

1.—Public Land—Oil and Gas—Lease—Development and Production—Forfeiture—Mandamus.

A lease by the State of public land for the development and production of oil and gas, it having been recognized by the State for nearly three years with large developments made and royalties paid to the State (Act of March 16, 1917, Laws, 35th Leg., ch. 83, p. 158) occupies the same legal status as a grant from the State by patent.  The Land Commissioner having no right to declare it void and lease to another, action for mandamus to require him so to do, by an adverse claimant of right to lease, will not lie.  (Pp. 443, 444).

2.—Same—Legality—Right to Attack.

The State having granted the lease for mineral production reciting compliance by the lessee with the law, such lease could only be attacked as invalid, because of irregularities fraud or collusion, by the State itself or by some one who had acquired equitable rights in the land prior to those of the lessee.  (P. 444).

3.—Oil and Gas—Permit to Prospect or Produce.

The Act of March 16, 1917, Laws, 35th Leg., p. 164, sec. 16, in providing that no permit, lease or patent shall embrace the area in two or more ap-

plications, nor embrace a divided area, has no application to land merely embraced, under the same description, in a previous application by the same party, which he had abandoned. (P. 444).

### 4.—Same—Form of Application.

Objection to a permit to prospect for oil on public lands because application therefor and field notes of survey purported to be both under section 3 (surveyed land) and section 4 (unsurveyed), instead of section 4 only, was technical and without merit, it appearing to have been made on a form so printed as to be applicable to either class, and all the proceedings being taken as under section 4. (P. 444).

### 5.—Same—Time of Survey.

It was immaterial to the validity of a survey of land on which an oil mining permit was applied for that part of the work appeared to have been done by the surveyor before the date of the application. (Pp. 444, 445).

### 6.—Same—Correctness of Survey.

Complaint of the incorrectness of the survey which the Land Commissioner had approved and on which an oil mining permit was granted presented a question of fact which the Supreme Court could not determine on an application for mandamus. And if the survey showed more acreage than the tract actually contained the only one prejudiced and entitled to complain was the lessee himself, who was paying by the acre on such excessive acreage. (P. 445).

### 7.—Same—Fact of Survey—Description.

Attack on the validity of an oil lease of public land because the surveyor fraudulently failed to make an actual survey and the lessee adopted his fraud, presented a question of fact not determinable by the Supreme Court on application for mandamus. The surveyor and the commissioner who was to approve his work (Act of March 16, 1907, sec. 5) are presumed to have done their duty. And the correctness of the surveyor's field notes (meanders of bed of a stream) was immaterial where the description independently of these accurately identified the land as being the bed of such stream between definite points. (P. 445).

### 8.—Oil Lease—Proof of Time of Commencing Work.

Failure of the grantee of a right to prospect for oil to make proof within the time required of having begun work of development did not operate as a forfeiture of his lease *ipso facto*. It required a suit by the State to forfeit. The Land Commissioner may be presumed to have ascertained that work was in fact begun within the time required. Oil having been discovered and produced in paying quantities, only the State could complain if strict compliance with the law was waived by the Commissioner. (P. 446).

Motion by Sawyer for leave to file in the Supreme Court a petition for writ of mandamus against Robison as Commissioner of the General Land Office, James N. Parker being joined with the latter as co-respondent.

The Supreme Court having referred the motion to the Commission of Appeals, Section A, for its opinion thereon, here, in accordance with such opinion refuses leave to file.

*Howth, Adams, O'Fiel & Hart, Joseph A. Wisong,* and *Dies, Stephenson & Dies,* for relator.

Where it appears from an inspection of a patent or lease or other instrument from the state, or where it appears from the statute under which said instrument is issued, that it was unauthorized by law, or that the officer from whom said instrument emanated did not have authority to grant it, it cannot be regarded in any case as evidence of title, but is *ab initio.* Cunningham v. Robison, 136 S. W., 441; Durrill v. Robison, 138 S. W., 107; Logan v. Currey, 95 Texas, 664, 69 S. W., 129; Leonard v. Benford Lbr. Co., 181 S. W., 797; McClallahan v. Marshall, 80 S. W., 862; Pollard's Heirs v. Files, 3 Ala., 47; Polk's Lessee v. Wendell, 9 Cranch, 86; Patterson v. Winn, 11 Wheat., 380; Pullian v. Runnels County, 15 S. W., 277; Rainer v. Durrill, 156 S. W., 589; Todd v. Fisher, 26 Texas, 241; Winson v. O'Connor, 69 Texas, 571, 5 S. W., 519; Wimberly v. Pabst, 55 Texas, 592; Hennessy v. Blair, 173 S. W., 873; Ketner v. Rogan, 68 S. W., 755; Hardiman v. Crawford, 66 S. W., 206; Miller v. Braunson, 50 Texas, 583.

With respect to the acquisition of title to public lands through accepting and complying with the conditions set forth in the statute making the offer to the public, or to a certain class of the public, and where the statute makes it the duty of the applicant himself to do and to perform all of the statutory requirements, and clothes the Land Commissioner or other state agent with the duty only of issuing to such applicant the evidence of title where apparently the applicant has complied with the requirements, such applicant must substantially make strict compliance with all of the material requirements set forth in the law as conditions precedent to the vesting of title before he can acquire any right and before the Commissioner or other state agent can have the legal authority to issue him a patent, lease or other evidence of such right and title; and if the Commissioner or other agent issues to the applicant such evidence of right or title, when as a matter of fact the applicant has not complied with such conditions precedent, the patent or lease or other instrument evidencing such title is void, and no right passes out of the State, and this principle is specially applicable and to be more strictly enforced with respect to public lands or areas such as that now in controversy, which are held by the state in trust for all the people, and to which the people have a stronger legal and equitable claim individually than to other classes of public domain. Bacon v. State, 21 S. W., 149; Campbell v. Wade, 132 U. S., 34; Monroe Cattle Co. v. Becker, 147 U. S., 45; Telfener v. Russ, 162 U. S., 172; White v. Martin, 17 S. W., 727; Thompson v. Railway, 68 Texas, 392, 4 S. W., 629; Sandborn v. Gunter, 20 S. W., 73, 17 S. W., 121; Gunter v. Meade, 78 Texas, 634,

14 S. W., 563; Winsor v. O'Connor, 69 Texas, 571, 8 S. W., 519, and cases cited; Adams v. Railway, 70 Texas, 252, 7 S. W., 729; Mobile v. Eslava, (Ala.) 33 Am. Dec., 325; San Francisco Company v. Petroleum Company, (Cal.) 77 Pac., 823, 103 A. S. R. 72, 1 Ann. Cas. 182, 66 L. R. A. 242; Reddell v. People, (Ill.) 52 N. E., 1052, 69 Ala., 790; Cobb v Lincoln, (Ill.) 67 N. E., 5, 95 A. S. R., 258, 63 L. R. A., 264; Union Depot Co. v. Brunswick, (Minn.) 17 N. W., 626, 47 Amer. Rep., 789; Lancing v. Smith, (N. Y.) 21 Amer. Dec., 89; See notes 53 A. S. R. 291, 293; Waters 27 R. C. L. Section 275; Mobile Transfer Co. v. Mobile, (Ala.) 44 So., 976, 127 A. S. R., 34, 13 L. R. A. (N. S.) 352; Hardeman v. Crawford, 66 S. W., 206.

On motion for rehearing, which was overruled.

In accordance with the established practice and procedure in cases of mandamus, the allegations must be taken and considered by this court as true, for the purpose of passing upon and determining the only question now before this court, to-wit: Whether relator has a right merely to file its petition for mandamus. Under all of the decisions relating to the practice and procedure in such cases it is the duty of this court to take all the allegations of relator's petition as true for said purpose; and if, considering them as true, the allegations of his petition show that he has a right to the filing, this court should grant the motion to file it. Thereafter, if these allegations, or any other material allegations are expressly denied under oath by the respondents, then the facts would be in dispute, and under the established practice of this court in such matters, this would have the effect to oust the jurisdiction, and the court would proceed no further, but relegate relator to his remedy in the courts below for the purpose of determining the disputed facts. Therefore, in the present status of this case, it is an unwarranted assumption on the part of this court to hold that the facts are in dispute, since they have not yet been denied. As a matter of fact these allegations are not in dispute, and will never be disputed under oath.

The act under consideration expressly requires that an actual survey on the ground be made, and Article 5336, Vernon's Sayles' Texas Civil Statutes expressly provides specifically what the field notes shall describe and contain, one of which requirements of field notes is that such survey was actually made in the field. The permit and lease to Parker were void and came to an end by operation of law for failure of the said Parker to file a sworn statement showing the work and labor that had been done within the time required by law, and this did work an *ipso facto* forfeiture.

We strenuously object to this court's determining all the issues and the substantial rights of relator on the theory of presumptions

alone; and especially so, since neither in reason nor in view of the allegations of relator's petition, can such presumptions be indulged in or have any legal efficacy, inasmuch as every and all of said issues, are fully covered by full direct and positive allegations in relator's petition, thus precluding the indulgence of presumptions, if this Honorable Court will follow the usual and customary practice of taking the express and affirmative allegations as true for purposes of determining the right to file.

MR. PRESIDING JUDGE GERMAN, delivered the opinion of the Commission of Appeals, Section A.

O. B. Sawyer is seeking leave to file a petition for writ of mandamus against J. T. Robison, as Commissioner of the General Land Office, and James N. Parker and several others are named as respondents. His purpose is to require the Commissioner by mandamus to cancel and set aside a certain oil and gas permit and lease heretofore granted to James N. Parker, and to compel him to issue to relator an exclusive oil and gas permit and lease on certain land in Orange County, Texas, being the bed or channel of Cow Bayou between certain designated points. The following statement will reflect the essential facts:

1. December 4, 1919, James N. Parker filed with the County Clerk of Orange County his application for permit to prospect for and develop oil and gas in the bed or channel of Cow Bayou. No action appears to have ever been taken under this application.

2. December 11, 1919, James N. Parker filed with the County Surveyor of Orange County his application for permit to prospect for and develop oil and gas in the bed or channel of Cow Bayou, which he designates as unsurveyed land, describing the same as containing approximately 494 acres, giving a general but accurate description of the land. This application was made under the provision of Chapter 83, Act approved March 16, 1917.

3. December 26, 1919, Parker filed in the General Land Office the application filed by him with the county surveyor December 11, 1919, together with field notes and plat made by Jack Noguess, county surveyor of Orange County, to which field notes was attached the certificate of the surveyor to the effect that the survey was made by him on the ground, and according to law, and that the boundaries, corners, etc., are truly described in the field notes. This certificate is dated December 23, 1919, and shows that the survey was made December 1st to 23rd, 1919. In addition to several hundred meander calls, these field notes accurately describe the land covered by the application by beginning at the intersection of the west bank of the Bayou with Sabine river, thence up the west bank with its meanders

to the northwest corner of the Henrie survey, thence across the Bayou to its east bank, thence down its east bank with meanders to the intersection with the Sabine river, thence to the beginning.

4. May 5, 1920, the Commissioner of the General Land Office issued to James N. Parker oil and gas permit No. 6814, based upon his application of December 11, 1919, covering 494 acres of land, describing it as above set out, which permit recites that Parker had fully complied with all the provisions of Chapter 83, Act approved March 16, 1917, with reference to the matter of obtaining such permit.

5. October 31, 1921, the Commissioner issued to the said Parker another permit, which recites that by inadvertence the first permit was partly prepared on blank form of permit used for University lands, and the second permit was used in lieu of ana as a substitute for the first. This second permit recites full compliance with the law, and contains all the requirements of the Act of March 16, 1917.

In the first permit granted, in which form for University lands was used, it is provided that before the expiration of eighteen months from its date the owner shall in good faith commence actual work necessary to the development, and if oil is not developed within eighteen months then the owner, within thirty days after the expiration of the eighteen months, shall file in the General Land Office a sworn statement that actual work was begun within the eighteen months. The second permit contains a like clause, but the time for commencing actual work is limited to twelve months instead of eighteen months.

6. October 4, 1921, Parker filed in the Land Office a sworn statement, made under date of October 1, 1921, to the effect that within the period of eighteen months allowed in the permit of March 5, 1920, he had begun actual work for the development of the land covered by his permit, which statement fully complies with the law in the matter of showing the work done, the expenses incurred, etc., and is supported by the affidavit of two disinterested persons. It also shows that during a part of the time bona fide litigation existed with reference to his right to the possession of the land covered by the permit. There is nothing in the statement to show the exact date when the actual work of development was done.

7. May 8, 1922, Parker filed in the General Land Office his affidavit under date of April 27, 1922, showing that on April 22, 1922, petroleum oil in commercial quantities had been developed from the area covered by his permit No. 6814. There is attached to this affidavit a log of the well, and it appears to be in compliance with the law in other respects. In connection with said statement he makes application for a mineral, oil and gas lease covering the land embraced in his permit.

8. On May 17, 1922, the Commissioner of the General Land Office issued to Parker a lease for the purpose of operating for and developing the oil and gas in and under the land covered by the permit, it being described in general terms as above set out. This lease appears to comply with the terms of the law with reference to payment of rentals, royalty, etc. Among other things it recites, "it appearing that the said James N. Parker has complied with all the provisions of the law relating to said permit."

Relator alleges that on January 12, 1924, he filed with the county surveyor of Orange County his application for permit to prospect for and develop oil and gas in the bed or channel of Cow Bayou, that in due time he caused an actual survey to be made, and that said application and field notes were properly filed in the General Land Office April 19, 1924; that he has tendered the sum of money necessary for obtaining a lease, it having already been pointed out to the Commissioner that oil in paying quantities had been theretofore produced on said lands; that he has in all respects complied with all the requirements of the law, and has made demand upon the Commissioner to grant him a permit and lease, which the Commissioner has refused to do.

The basis of relator's request for mandamus is that due to certain alleged fraud on the part of the county surveyor, which was ratified by Parker, the failure of Parker to comply with certain requirements of the law, and certain alleged irregularities in connection with the application, the permit and lease were *ipso facto* forfeited, and are null and void; and that by reason of his application he is entitled to a permit and lease for developing said land for oil and gas.

Before setting out the contentions upon which he relies we briefly refer to two propositions of law which we think conclusively destroy the foundation of relator's alleged right to obtain by mandamus the ends sought by him.

The lease to Parker was granted May 17, 1922, and has therefore been recognized by the State for nearly three years. Large developments have been made thereunder and the State has received substantial benefits in the way of royalties, etc. No action has been taken by the State to annul the same. We therefore think it occupies exactly the same legal status as grant from the State to land. It concedes to the lessee and his assigns all the right and title of the State to the estate dealt with, under the conditions stated therein, the same as a patent conveys the title of the State to land. The Act in question does not give the Commissioner of the General Land Office power or authority to declare said lease void and grant rights in conflict with it. He should, therefore, not be compelled to do so in a proceeding of this kind. That there has been no *ipso facto* forfeiture of the permit

or lease by reason of any provision of the law we think is certain. Underwood v. Robinson, 109 Texas, 228, 204 S. W., 314. If the lease has been wrongfully granted, the proper procedure is an action by the State to cancel same. Taking the position, as we do, that the lease is entitled to the same legal consideration as a patent from the State, the opinion of the Supreme Court in the case of Fitzgerald v. Robison, 110 Texas, 468, 220 S. W., 1068, becomes directly applicable.

Again, it is disclosed that the alleged rights of relator accrued about four years after issuance of the permit to Parker and about two years after the granting of the lease. He therefore has no prior equities. The granting of the permit and oil lease by the Commissioner of the General Land Office, reciting that all provisions of the law with reference thereto had been complied with, precludes all parties, other than the State and those holding prior equities, from attacking the validity of same because of irregularities, fraud or collusion. Logan v. Curry, et al., 95 Texas, 664, 69 S. W., 129; Barnes v. Williams, 102 Texas, 444, 119 S. W., 89; Campbell v. Elliot, 151 S. W., 1180, (writ refused.).

It is wholly unnecessary to notice all of the propositions relied upon by the relator. We refer to some of the more substantial ones.

1. Complaint is made because Parker filed two applications for permit, one with the county clerk December 4, 1919, and the other with the county surveyor December 11, 1919, it being claimed that this was in violation of that section of the law which provides that "no permit, lease or patent shall embrace the area in two or more applications; and no application, permit, lease or patent shall embrace a divided area." The record is conclusive that each and every subsequent step taken in the matter was under the application of December 11, 1919, it is very evident that the application of December 4, 1919, was abandoned. As the two embraced the same area, the section of the law quoted has no application whatever.

2. Complaint is also made because the permit and field notes purport to have been made in accordance with the provisions of Sections 3 and 4 of Chapter 83, instead of under Section 4 only. It is apparent from an examination of these papers that they were prepared on forms which had been printed so as to be applicable and to be used by persons applying under the provisions of either section. It appearing that all proceedings were taken as under Section 4 of the Act, this contention is purely technical and without merit.

3. It is claimed that the application is not valid because the survey was made between the dates of December 1st and December 23rd. while the application was not filed until December 11th. It occurs to us as wholly immaterial that a part of the work may have been

done before the application was filed, if it were completed and adopted by the surveyor after the filing of the application, as applying to the application in question.

4. It is asserted that the field notes and plat which accompanied the application do not correctly represent the true course of the bed of the Bayou, and the courses and distance called for cannot be found on the ground. This presents a question of fact. Besides it is presumed that the Commissioner of the General Land Office, as required by Section 5 of the Act, examined the field notes and found them correct. Complaint is also made in this connection that the application designates the area as containing approximately 494 acres, while in fact there are only 413 acres. Parker appears to have made payments on the basis of 494 acres, and if there was a less acreage certainly the State nor anyone else has a right to complain.

5. Relator strenuously insists that the permit and lease are void, because it appears from a consideration of the field notes and the plat that the county surveyor did not make an actual survey of the land on the ground, and that therefore his certificate to that effect is false; that by reason of this fraudulent representation made by the surveyor, and ratified by Parker, and the fact that there was no actual survey made on the ground, the permit and lease are void. The failure to make an actual survey on the ground, especially, as here, when the area can be accurately described without a survey, does not render the permit void. Finberg v. Gilbert, 104 Texas, 539, 546, 141 S. W., 82. Besides it is presumed that the surveyor did his duty and made a truthful statement in his certificate, until the contrary is proven. This, as we see it, presents an issue of fact, and we think the affidavit of the surveyor filed herein, which tends to impeach his certificate, could, if necessary, be treated as having no probative force. See Johnston v. Cin. N. O. & T. P. Ry. Co., 146 Tenn., 135, 240 S. W., 430. But we call attention to the fact that Section 5 of the Act provides that ''If upon examination the application or the application and field notes are found to be correct and the area applied for is within the provisions of this Act,'' the Commissioner shall issue the permit. The Commissioner having issued the permit in this instance it is presumed that he did his duty, that he had all the necessary data, knowledge and information upon which to base his action, and that he found the field notes to be correct. Clements v. Robinson, 111 Texas, 449, 239 S. W., 902. The area in question, being the bed or channel of the Bayou, was susceptible of accurate description without a survey, and the Commissioner evidently found in the field notes and application all necessary data for computing the acreage.

6. Relator strenuously contends that the lease is void and that there was a forfeiture of the permit by operation of law, because the sworn statement of Parker as to the beginning of actual work was not filed until October 4, 1921, whereas the law required the filing of such statement within thirteen months after the issuance of permit. That this did not work an *ipso facto* forfeiture see Underwood v. Robison, *supra*. The purpose of such statement no doubt was to advise the Commissioner as to what *bona fide* efforts were being made to prospect and develop the land, it being evidently contemplated that such efforts would be begun within twelve months from the date of the permit. The affidavit of Parker shows that substantial work was done within a period of eighteen months, but it does not follow from this that it was not begun within a period of twelve months. It will be presumed that the Commissioner ascertained that the law with reference to actual work begun and done was complied with, and it seems to us to be immaterial that the affidavit was not filed within the time specified. It further appears that oil was discovered and developed in paying quantities, within a period of two years from the issuance of permit, as a result of the efforts of Parker, which the State accepted as sufficient consideration for granting the lease, and we certainly think that no one other than the State is in position to complain if a strict compliance with the requirements of the law was waived by the Commissioner.

This disposes of every substantial contention made by relator, and we recommend that the motion for leave to file the petition for mandamus be denied.

The opinion of the Commission of Appeals on motion for leave to file the petition for mandamus is adopted and the motion is everruled.

*C. M. Cureton,* Chief Justice.