IVAN B. MACKEY V. J. T. ROBISON, COMMISSIONER OF THE GENERAL LAND OFFICE.

No. 4763.   Decided March 2, 1927.

(291 S. W., 1102).

1.—Mandamus—Supreme Court—Question of Fact.

Being without power to determine disputed questions of fact in an original proceeding for mandamus against a State officer, the Supreme Court here dismiss the petition of relator seeking such writ to require the Land Commissioner to issue permit to prospect for oil and gas on certain land, it appearing by the answer filed that such land, claimed by relator to be unsold and unsurveyed State school land, was within the bounds of land previously granted by the State to another without reservation of the minerals therein. The question, involving a complicated issue of fact as to the boundary lines, could not be determined in this form of action. (Pp. 375-378).

2.—Same—Authority of Land Commissioner—Survey.

The Land Commissioner, being required by Art. 5341, Rev. Stats., to determine whether the field notes of land on which permit to prospect for minerals was sought were correct and whether the area applied for was within the provisions of the law for granting such permit, was not bound by the field notes of the county surveyor showing that it was so, and was not within the boundaries of land previously patented by the State. (P. 376).

3.—Same.

The Land Commissioner is not a judicial officer and is without authority to adjudicate as to the validity, or, as it seems, as to the boundaries of land previously granted by the State. Such issue may be tried by the State in suit to recover the land as public domain not previously granted, and if so recovered it is to be treated as such public domain. Fitzgerald v. Robison, 110 Texas, 468; Sawyer v. Robison, 114 Texas, 445, followed. (Pp. 376, 377).

Original application by Mackey to the Supreme Court for writ

of mandamus against Robison as Commissioner of the General Land Office.

The Supreme Court, having granted permission for filing the application, referred the questions arising thereon and upon the answer of respondent to the Commission of Appeals, Section B, for their opinion thereon and here dismiss the application in accordance with such opinion.

*Robert E. O'Keefe* and *Reeder & Reeder,* for relator.

*Claude Pollard,* Attorney-General, and *C. W. Truehart,* Assistant, for respondent.

The briefs of both parties were occupied with the discussion and application of the various statutes under which relief was sought by relator, questions not determined by the opinion rendered.

MR. PRESIDING JUDGE POWELL delivered the opinion of the Commission of Appeals, Section B.

Ivan B. Mackey, under Arts. 5338 to 5352 of the Revised Civil Statutes of 1925, sought from the Land Commissioner of this State a permit to prospect for oil and gas on 88.25 acres of alleged unsurveyed unsold school land in Hutchinson County. The applicant complied with the statutes and sent the county surveyor's field notes to the Commissioner at Austin. The Commissioner refused the permit. Upon such refusal, Mackey sought and obtained permission for the filing in the Supreme Court of a petition for mandamus. Such petition asks that the Commissioner be compelled to issue the mineral permit to Mackey. In the petition it is alleged that the Commissioner declined to issue the permit for the following reason:

"But that respondent, disregarding his duty in that regard, and in violation of the rights of relator in the premises, has failed to find said field notes to be correct and to approve the same, in so far as petitioner is informed, and has, contrary to law and his duty in the premises, found the area so by relator applied for not to be within the provisions of the laws of Texas relating to the issuance of prospecting permits to prospect for and develop petroleum and natural gas and has made his order in writing rejecting your relator's said application in all things assigning as a reason for such action that said land was not subject to the issuance of prospecting permits and was subject

to lease for oil and gas development only under the provisions of Sec. (Article) 5353 of the Revised Civil Statutes of 1925, and so has failed and refused and does still continue to fail and refuse to issue a permit to your petitioner thereon according to law or at all."

Upon the allegation that the county surveyor's field notes were correct and covered unsurveyed unsold public school lands, and upon the further allegation that the Commissioner contended that this application for permit was governed by Arts. 5353, etc., of our Revised Civil Statutes, the filing of the petition was permitted.   In answer to the petition, the respondent says, in part:

"For further and special answer herein respondent denies that the tract of land upon which relator seeks permit to prospect for oil and natural gas belongs to the public free school fund of this State, and denies that said tract is a part of the unsold, unsurveyed public school land, and denies that the area applied for is within the provisions of either Arts. 5338 to 5352 or 5353 to 5366, and denies that relator is entitled to the permit applied for, and says that his refusal to issue permit is fully justified in this: that the area in question is not vacant or unsurveyed unsold public school land, but in truth and in fact a portion of Sec. 4, Block B-4, D. & S. E. Railway Company school land, which said section was sold to R. Meegan on May 31, 1898, without mineral reservation, said sale being then valid and now in good standing, all as disclosed by the records of the General Land Office of this State.

"Respondent does not admit but on the contrary denies that the unsold unsurveyed public free school lands, come within the terms of Arts. 5338 to 5352 as claimed by relator, and says that the unsold unsurveyed public free school lands come instead and only, in so far as lease or permit to prospect for oil and natural gas is concerned, within the terms of Arts. 5353 to 5366; but respondent says that this question of statutory construction does not arise in this case for the reason that the area for which relator has applied is not unsold public free school land, but upon the contrary has been sold and is now privately owned, as hereinbefore alleged."

In the nature of a reply to aforesaid answer by respondent, relator files an amended petition, stating that the Commissioner is in error in all he has said.   The pleadings set up about as complicated a boundary suit as we have ever seen.

Inasmuch as the pleadings show and develop a fact issue which cannot be tried in this court in a proceeding of this kind, the petition should be dismissed.   In an effort to avoid this action,

counsel for relator suggested that the field notes of the county surveyor, *if they merely close,* are *binding* upon the State Land Commissioner, and, therefore, no question of fact is presented. We cannot assent to any such restricted or limited construction of the duties of the Land Commissioner under Art. 5341 of our Revised Statutes of 1925, reading as follows:

"When the Commissioner receives an application that was filed with the county clerk or with the surveyor and the field notes and plat, one dollar filing fee and ten cents per acre for each acre applied for, which shall also be paid annually thereafter during the life of the permit, and an affidavit by the applicant showing what interest he has in any other permit, lease or patent issued under this law and in good standing, he shall file the same, and if upon examination the application and field notes are found correct and the area applied for is within the provisions of this law, the Commissioner shall issue to the applicant or his assignee a permit conferring upon him an exclusive right to prospect for and develop petroleum and natural gas within the designated area for a term not to exceed two years."

The language of this Act is plain. The Commissioner must find the field notes correct and also that the area applied for is within the provisions of the Act; that is that it is *unsold* land. It was never contemplated that a county surveyor could compel the State Land Commissioner to patent land, as being vacant or unsold land, which the Commissioner concluded had already been sold by the State. If our construction of this article needs any citation of authority, it is found in an able opinion by Chief Justice Phillips in the case of Fitzgerald v. Robison, 110 Texas, 468. The court refused to permit the filing of a petition for mandamus in that case. It said:

"The land here involved was patented to Ashbel Smith in the year 1859, and it is now held under that patent. The patent has never been annulled by any suit at the hands of the State. For more than sixty years the State has recognized its validity so far as indicated by any action on its part. As between the State and other parties, therefore, the land has the *status* of titled land.

"We do not think the Land Commissioner, an executive officer, has the authority or is at liberty to disregard the patent, by his own action in effect declare it void, and grant rights in conflict with it; and he should not be compelled to do so.

"It was for this reason that the Commissioner refused to issue the permit, and his action must be approved.

"The Commissioner is not a judicial officer. It is not his function to annul grants of land formally made by the State, and because so made, entitled to be respected until set aside by appropriate judicial proceedings. A patent to land can only be attacked by the State or someone invested with a right prior to the patent. Dunn v. Wing, 103 Texas, 393.

"If the particular land has been wrongfully patented, and it is rightfully a part of the public domain, the remedy of the State is an action in the District Court prosecuted by the Attorney-General. Art. 5468.

"This court will not pass upon the validity of such titles in mandamus proceedings brought by private parties against the Land Commissioner. A contrary ruling would but announce that the Land Commissioner, in the first instance, has the authority to adjudicate such titles, and, if in his opinion invalid, annul them."

In the Fitzgerald case, the Commissioner felt that the land applied for had already been sold, just as he feels in the instant case. He declined to issue a mineral permit thereon in both instances. The Supreme Court sustained his decisions in the Fitzgerald case. This court will not mandamus the Commissioner to do any act inconsistent with a former patent by the State to any of its lands. If the Commissioner be mistaken in his judgment, the State can recover the land in a court of competent jurisdiction as outlined in the Fitzgerald case. And, when so recovered by the State, mineral permits thereon may then be issued.

In the case of Sawyer v. Robison, 114 Texas, 445, permission for the filing of a petition for mandamus was *denied*. The relator attempted to set aside an oil and gas permit formerly issued to another and then have it re-issued to himself. One of the allegations attacking the *former* permit was that the field notes accompanying the application were *incorrect*. The court said:

"It is asserted that the field notes and plat which accompanied the application do not correctly represent the true course of the bed of the bayou, and the courses and distance called for cannot be found on the ground. This presents a question of fact."

Under the former rulings by our Supreme Court, we have here a question of fact and an attempt to adjudicate that character of case which is not within the jurisdiction of this court. It is but an effort by a private party, in a mandamus proceeding, to pass upon the validity of a former title which the Commissioner alleges passed from the State to another. No such rights can be tried in a mandamus case. See: Fitzgerald v. Robison,

supra. If this land had already been sold, as claimed by the Commissioner, the question of statutory construction here involved becomes entirely immaterial.

For the reasons indicated, this court is without jurisdiction to further consider the petition of relator and we recommend that it be dismissed at his cost.

Relator's petition dismissed at his cost, as recommended by the Commission of Appeals.

<div align="right">

*C. M. Cureton,* Chief Justice.